Mark Wayne LOMAX, Appellant,

v.

The STATE of Texas.

No. PD–0944–06.

Court of Criminal Appeals of Texas.

June 27, 2007.

Rehearing Denied Sept. 12, 2007.

Joseph Leo Lanza, Houston, for Appellant.

Eric Kugler, Asst. District Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, KEASLER and COCHRAN, JJ., joined.

In this case, we decide that felony driving while intoxicated (felony DWI) [1] can be the underlying felony in a "felony-murder" prosecution under Section 19.02(b)(3), TEX. PEN.CODE, which, among other things, provides that a person commits murder if he causes a person's death during the commission of a "felony, other than manslaughter." [2]

A jury convicted appellant of felony-murder and sentenced him, as an habitual offender with two prior felony convictions, to 55 years in prison. Viewed in the light most favorable to the jury's verdict, the evidence shows that appellant was committing felony DWI [3] on a crowded public street and also tailgating, speeding and weaving when his car collided with another car resulting in the death of a five-year-old girl.[4] Appellant's blood-alcohol content was about three times the legal limit at the time of the collision. Appellant was charged with felony-murder under Section

---

1. *See* Section 49.09(b)(2), TEX. PEN.CODE.

2. Section 19.02(b)(3) provides that a person commits the offense of murder if he:
   (3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

3. The record reflects that appellant had two prior DWI convictions, which made the underlying felony DWI a third-degree felony. *See* Section 49.09(b)(2).

4. The evidence, therefore, shows that the victim's death occurred "in the course of and in furtherance of" appellant's commission of an inherently dangerous felony DWI. *See* Section 19.02(b)(3); *Johnson v. State,* 4 S.W.3d 254, 255–58 (Tex.Cr.App.1999) (felony-murder conviction can be based upon the underlying felony without proof of any additional dangerous act beyond that covered by the underlying felony); *Lawson v. State,* 64 S.W.3d 396, 400–01 (Tex.Cr.App.2001) (Cochran, J., concurring) (same).

19.02(b)(3), with the felony DWI alleged as the underlying felony.[5]

Appellant claimed in the trial court and on direct appeal that felony DWI cannot be the underlying felony for felony-murder, because the underlying felony is what supplies the required culpable mental state for felony-murder and felony DWI cannot supply this culpable mental state since felony DWI does not require proof of a culpable mental state.[6] The court of appeals rejected this claim. *See Lomax v. State,* No. 10–03–00156–CR, slip op. at 2–4, 2006 WL 871723 (Tex.App.-Waco, delivered March 29, 2006) (not designated for publication) (definition of felony-murder "plainly dispenses with any mental element" when felony DWI is the underlying felony for felony-murder). We granted review of the following ground:

> Can a felony murder conviction be based on an underlying felony that expressly requires no *mens rea*, despite the fact that in a felony-murder conviction, the *mens rea* for the act of murder is supplied by the *mens rea* of the underlying felony?

■ The issue is whether Section 19.02(b)(3), which does not prescribe a culpable mental state, "plainly dispenses" with a culpable mental state. *See* Section 6.02(b), TEX. PEN.CODE, (if definition of offense "does not prescribe a culpable mental state," a culpable mental state "is nevertheless required unless the definition plainly dispenses with any mental ele-

ment"); *Aguirre v. State,* 22 S.W.3d 463, 470 (Tex.Cr.App.1999). We must presume that a culpable mental state is required unless a contrary intent "is manifested by other features of the statute." *See Aguirre,* 22 S.W.3d at 471–72.

It is significant and largely dispositive that Section 19.02(b)(3) omits a culpable mental state while the other two subsections in Section 19.02(b) expressly require a culpable mental state. A person commits murder under Section 19.02(b)(1), TEX. PEN.CODE, when he "knowingly and intentionally" causes a person's death. A person commits murder under Section 19.02(b)(2), TEX. PEN.CODE, when he "intends to cause serious bodily injury" and commits an act clearly dangerous to human life that causes a person's death. The omission of a culpable mental state in Section 19.02(b)(3) is "a clear implication of the legislature's intent to dispense with a mental element in that [sub]section." *See Aguirre,* 22 S.W.3d at 473. As this Court explained in *Aguirre,* 22 S.W.3d at 472–73:

> The language of the statute is, of course, to be considered. "It is particularly significant when some such word as 'knowingly' is used in one section of a statute and omitted from another." [Footnote omitted]. An example is The Meat Inspection Law of 1945. [Footnote omitted]. The act defined criminal offenses in four consecutive sections. The first three sections made it unlawful "to knowingly sell" meat from diseased ani-

---

**5.** In relevant part, the indictment alleged that appellant "while in the course of and the furtherance of the commission of [felony DWI] did commit an act clearly dangerous to human life, to wit: by operating his motor vehicle ... at an unreasonable speed, by failing to maintain a proper lookout for traffic and road conditions, and by failing to take adequate evasive actions prior to striking a motor vehicle occupied by [the victim] and did thereby cause the death of [the victim]."

**6.** The Legislature has plainly dispensed with proof of a culpable mental state for felony DWI. *See* Section 49.11, TEX. PEN.CODE, (expressly dispensing with proof of culpable mental state in prosecutions under Chapter 49 with one exception not applicable in this case).

mals, [footnote omitted] and "to knowingly sell or offer to sell" meat from animals that died other than by slaughter. [Footnote omitted]. The fourth section made it unlawful simply "to sell" meat from animals such as horses. [Footnote omitted]. The omission of a culpable mental state from only one of the four sections was a clear implication of the legislature's intent to dispense with a mental element in that section. This Court had no difficulty in concluding that a culpable mental state was not part of the offense defined in that section. *See Neill v. State,* 154 Tex.Crim. 549, 552, 229 S.W.2d 361, 363 (1950).

Appellant argues that interpreting Section 19.02(b)(3) to dispense with a culpable mental state renders murder under Section 19.02(b)(3) a "strict liability" offense and that "murder is never a strict liability crime in Texas." While Section 19.02(b)(3) might contain some features not normally associated with "strict liability" offenses, on balance these features do not overcome the clear legislative intent to plainly dispense with a culpable mental state. *See Aguirre,* 22 S.W.3d at 472–76.[7] And, deciding that Section 19.02(b)(3) dispenses with a culpable mental state is consistent with the historical purpose of the felony-murder rule, the very essence of which is to make a person guilty of an "unintentional" murder when he causes another person's death during the commission of some type of a felony. *See Threadgill v. State,* 146 S.W.3d 654, 665 (Tex.Cr.App.2004) (felony-murder is an "unintentional" murder committed in the course of a felony); *Lawson,* 64 S.W.3d at 397–403 (Cochran, J., concurring) (discussing history of felony-murder rule); *Rodriguez v. State,* 953 S.W.2d 342, 345–54 (Tex.App.-Austin 1997, pet. ref'd) (Onion, J.) (discussing felony-murder rule at common law, under Texas statutory law until 1974, under the 1974 penal code and case law, and under the 1994 penal code). We hold that Section 19.02(b)(3) plainly dispenses with a culpable mental state.

Appellant also claims that interpreting Section 19.02(b)(3) to dispense with a culpable mental state is inconsistent with Commissioner Reynolds' opinion for this Court in *Rodriquez v. State.*[8] Appellant further claims that, in order to affirm the court of appeals' decision, this "Court must acknowledge that *Rodriquez* was decided wrongly and the felony murder statute is unconstitutional as vague and indefinite for failure to state a culpable mental state."[9]

---

7. In addition, felony-murder is not like the "strict liability" or "public welfare" offenses described in *Aguirre. See Aguirre,* 22 S.W.3d at 472–75. Unlike the "public welfare" offenses described in *Aguirre,* Section 19.02(b)(3), though not requiring a culpable mental state, still requires a defendant to commit a felony involving a clearly dangerous act. This also requires some element of "voluntariness," which, in cases like this, would include taking that first drink. *See Rogers v. State,* 105 S.W.3d 630, 635–39 (Tex.Cr.App. 2003) ("voluntary act" requirement must "include an act" that is voluntary and "does not necessarily go to the ultimate act"). It is, therefore, not completely accurate to characterize Section 19.02(b)(3) as defining a "strict liability" offense.

8. 548 S.W.2d 26, 28–29 (Tex.Cr.App.1977).

9. Appellant did not raise any constitutional claims in the trial court. We also do not believe that construing Section 19.02(b)(3) to dispense with a culpable mental state renders it "vague and indefinite." It unambiguously apprises an ordinarily intelligent person, with two prior felony convictions and two prior DWI convictions, that he could go to prison for 55 years if he kills someone during the commission of another DWI. *See Bouie v. City of Columbia,* 378 U.S. 347, 350–51, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (constitutional requirement of definiteness requires criminal statute to give person of ordinary intelligence fair notice that the statute forbids his contemplated conduct).

The defendant in *Rodriquez* claimed that the felony-murder statute in that case,[10] which, like current Section 19.02(b)(3), also omitted a culpable mental state, was "unconstitutional for vagueness and indefiniteness," because it failed to show "what culpable state of mind" was required "in the commission of the 'act clearly dangerous to human life that causes the death of an individual.'" *See Rodriquez*, 548 S.W.2d at 28. Commissioner Reynolds' opinion for this Court applied the following analysis to this constitutional claim:

Section 6.02 of the Penal Code provides, in part, that

"(a) Except as provided in Subsection (b) of this section, a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

"(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.

"(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b) of this section, intent, knowledge, or recklessness suffices to establish criminal responsibility."[11]

From a consideration of these sections together, it logically follows that because [§ 19.02(b)(3)] **is silent as to, and does not plainly dispense with, the culpable mental state required for the underlying felony committed or attempted,** § 6.02(b) mandates that the culpable mental state shall, as specified in § 6.02(c), be one of intent, knowledge or recklessness. Upon the establishment of the underlying committed or attempted felony embracing the requisite mental element, [§ 19.02(b)(3)] then *declares that an act which is committed in the course and in furtherance of, or in immediate flight from, the underlying committed or attempted felony and which is clearly dangerous to human life and causes death shall constitute murder.* **Thus, the culpable mental state for the act of murder is supplied by the mental state accompanying the underlying committed or attempted felony giving rise to the act.** The transference of the mental element establishing criminal responsibility for the original act to the resulting act conforms to and preserves the traditional men rea requirement of the criminal law. [Citation omitted].

Consequently, [§ 19.02(b)(3)] is not unconstitutional for its failure to specify the culpable mental state required for the act of murder. The fourth ground is overruled.

*Rodriquez*, 548 S.W.2d at 28–29 (emphasis supplied).

■ We begin by noting that the defendant in *Rodriquez* claimed that a culpable mental state was required for the "act clearly dangerous to human life." *See Rodriquez*, 548 S.W.2d at 28. However, the *Rodriquez* Court instead decided that the culpable mental state for "the act of murder" is supplied by the culpable mental state accompanying the underlying felony. *See id.* But, any culpable mental state accompanying the underlying felony cannot supply the culpable mental state for "the act of murder,"[12] because the very

---

10. *See* Former Section 19.02(a)(3) (1974 Penal Code).

11. These statutory provisions in *Rodriquez* are consistent with current Sections 6.02(a),(b), and (c), TEX. PEN.CODE.

12. Judge Onion's opinion in *Rodriguez* states

nature of the felony-murder rule is that there is no culpable mental state "for the act of murder." *See Threadgill,* 146 S.W.3d at 665 (felony-murder is an "unintentional" murder committed in the course of a felony); *Lawson,* 64 S.W.3d at 397–403 (Cochran, J., concurring).

■ *Rodriquez* also decided, based solely on the omission of a culpable mental state in the applicable felony-murder statute, that the felony-murder statute did not plainly dispense with a culpable mental state for the underlying felony. *See Rodriquez,* 548 S.W.2d at 28 ("it logically follows that because [§ 19.02(b)(3) ] is silent as to, and does not plainly dispense with, the culpable mental state required for the underlying felony," then the culpable mental state shall "be one of intent, knowledge or recklessness").[13] But, it is the underlying felony itself, and not the felony-murder statute, that determines whether the un-

derlying felony requires a culpable mental state.[14]

Based on the foregoing, we decide to overrule only that portion of the holding in *Rodriquez* that a culpable mental state is required for "the act of murder" in a felony-murder prosecution and that the mental state of the underlying felony supplies this culpable mental state.[15] It is, however, unnecessary to overrule *Rodriquez* as having decided that a culpable mental state is required for the "act clearly dangerous to human life" feature of Section 19.02(b)(3), since *Rodriquez* did not address that issue.[16]

■ We also understand appellant to argue that the 1993 legislative changes to the felony-murder statute and to other provisions in Chapter 19 and the addition of the more specific intoxication-related offenses in Chapter 49 indicate a legislative intent that a DWI homicide (whether the DWI be a felony or a misdemeanor) be

that this "sort of talk is pure fiction."

The courts sometimes explain felony murder by stating that the felon's intent to commit the [underlying] felony supplies the intent to kill, so that the felon intended to kill, resulting in a plain case of intent-to-kill murder. [Citations omitted]. This sort of talk is pure fiction and it is better to recognize felony murder as a category of murder separate from intent-to-kill murder.
*See Rodriguez,* 953 S.W.2d at 353–54, *quoting* Wayne LaFave & Austin W. Scott, *Handbook on Criminal Law,* § 71, at 545 n. 2 (West 1972); *Lawson,* 64 S.W.3d at 401 (Cochran, J., concurring) (stating that Judge Onion's opinion in *Rodriguez* contains the "best historical analysis" of the felony-murder doctrine).

13. *But see Aguirre,* 22 S.W.3d at 471 (statute's "mere omission of a mental element" cannot, standing alone, be construed to plainly dispense with a mental element).

14. It is difficult to imagine how Section 19.02(b)(3), with its silence as to a culpable mental state, could be construed to require a culpable mental state for an underlying felony

for which the Legislature has plainly dispensed with a culpable mental state.

15. This holding in *Rodriquez* is inconsistent with the plain language of Section 19.02(b)(3) and the historical purpose of the felony-murder rule, and it conflicts with newer, more soundly reasoned, decisions such as Judge Onion's opinion in *Rodriquez* and Judge Cochran's concurring opinion in *Lawson. See Awadelkariem v. State,* 974 S.W.2d 721, 725 (Tex.Cr.App.1998) (*stare decisis* principles have less force when the older precedent is inconsistent with newer, more soundly reasoned, decisions).

16. We also note that this Court's subsequent decision in *Lugo–Lugo v. State* decided that the "act clearly dangerous to human life" language in what is now Section 19.02(b)(2) does not require a culpable mental state. *See Lugo–Lugo v. State,* 650 S.W.2d 72, 81 (Tex. Cr.App.1983) (culpable mental state not applicable to the conduct that is clearly dangerous to human life under [Section 19.02(b)(2) ] which requires that the act intended to cause serious bodily injury be objectively clearly dangerous to human life).

prosecuted exclusively as intoxication manslaughter under Section 49.08(a), Tex. Pen. Code. Appellant argues:

> The presence of a specific statute, intoxication manslaughter, which does not exclude felony DWI or limit itself to misdemeanor DWI, represents an expression of legislative intent that intoxication homicides be prosecuted under § 49.08, especially in light of the fact that the Legislature's intent in enacting Chapter 49 was to gather all intoxication-related offenses and definitions in one chapter, as opposed to having them spread throughout the penal code.[17]

Omitting citations to authority and internal quotations, we quote from Judge Onion's opinion in *Rodriguez* describing the judiciary's duty to construe a statute when its plain language does not "lead to absurd consequences that the legislature could not possibly have intended."

> It is the duty of the court to administer the law as it is written, and not to make law; and however harsh a statute may seem to be, or whatever may seem to be its omission, courts cannot ... make it apply to cases to which it does not apply, without assuming functions that pertain to the legislative department of the government. The legislature is constitutionally entitled to expect that the judi-

ciary will faithfully follow the specific text that was adopted.

In divining legislative intent, we look first to the language of the statute. When the meaning is plain, we look no further. We focus on the text of the statute and interpret it in a literal manner to discern a fair, objective meaning of the text. When a court interprets a statute, it is obliged to implement the expressed will of our legislature, not the will it keeps to itself. If the meaning of the statutory text, when read using the established canons of statutory construction relating to such text, should have been plain to the legislators who voted on it, courts will ordinarily give effect to that plain meaning. Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed and it is not for the courts to add to or subtract from such statute.

*Rodriguez*, 953 S.W.2d at 353.[18]

Prior to 1993, former Section 19.05(a)(2) in the penal code codified the DWI version of involuntary manslaughter.[19] Also, prior to 1993, most DWI offenses were defined in civil statutes outside the penal code.[20] Under these pre–1993 civil statutes, a person was guilty of felony DWI if the person was convicted of DWI and it was shown that he had "two or more" prior DWI convictions.[21] In 1993, the Legislature re-

---

**17.** Appellant has not produced any extratextual legislative history of Chapter 49 to support his claim that Chapter 49 is the exclusive domain of DWI homicides. Our extratextual research of the legislative history of the 1993 legislative changes to the penal code (Senate Bill 1067) indicates that the legislative record is silent on whether the Legislature intended that Chapter 49 be the exclusive domain of DWI homicides.

**18.** *Accord Boykin v. State,* 818 S.W.2d 782, 785–86 (Tex.Cr.App.1991).

**19.** *See* Former Section 19.05(a)(2) (1974 Tex. Pen.Code) (person committed offense of invol-

untary manslaughter if he "by accident or mistake" when operating a motor vehicle "while intoxicated and, by reason of such intoxication, cause[d] the death of an individual").

**20.** *See* Former Tex.Rev.Civ. Stat. Ann., art. 6701*l*–1; Acts 1987, 70th Leg., ch. 507, § 3.

**21.** *See* Former Article 6701*l*–1(e)(2) (if person had "two or more" prior DWI convictions, the offense was punishable by confinement in jail for a term of not less than 30 days or more than two years "or imprisonment in the state penitentiary for a term of not less than 60 days or more than five years"); Former

pealed former Article 6701*l*,[22] eliminated the DWI version of involuntary manslaughter codified in former Section 19.05(a)(2),[23] and recodified this offense in almost identical terms as intoxication manslaughter in Section 49.08(a).[24] The Legislature also recodified felony DWI in Section 49.09(b)(2) in almost identical terms to its definition in former Article 6701*l*–1(e)(2) and former Section 12.41(1).[25]

These 1993 legislative enactments, therefore, made very few substantive changes to prior law.[26] These 1993 legislative enactments seem to have been primarily intended, as appellant asserts, "to gather all intoxicated-related offenses and definitions in one chapter, as opposed to having them spread throughout the penal code." It is not apparent to this Court that these largely nonsubstantive 1993 legislative enactments were intended to make Chapter 49 the exclusive domain of DWI homicide prosecutions. Nothing in the pre–1993 law required that DWI homicides be prosecuted exclusively under the

DWI version of involuntary manslaughter set out in former Section 19.05(a)(2)—the statutory predecessor to intoxication manslaughter in Section 49.08(a).

■ The plain language of Section 19.02(b)(3) also does not exclude felony DWI as an underlying felony for a felony-murder prosecution, and we must understand the Legislature to have meant what the plain language of Section 19.02(b)(3) expresses.[27] In addition, that a general and a more specific statute might be viewed as proscribing the same conduct does not, standing alone, compel a conclusion that the Legislature intended that this conduct be prosecuted exclusively under the more specific statute. *See State v. Pembleton*, 978 S.W.2d 352, 355–56 (Mo.Ct. App.1998) (majority rule is that specific statute dealing with the killing of a person during a DWI does not preempt the general criminal statute because "a prosecutor has the discretion of choosing which statute to proceed on when two statutes proscribe the same behavior").[28]

Section 12.41(1) (1974 Penal Code) (any conviction "not obtained from a prosecution under" the penal code shall be classified as a third-degree felony "if confinement in a penitentiary is affixed to the offense as a possible punishment").

**22.** *See* Acts 1993, 73rd Leg., ch. 900, § 1.15.

**23.** *See* Acts 1993, 73rd Leg., ch. 900, § 1.01.

**24.** *See* Section 49.08(a) (person commits intoxication manslaughter if person operates a motor vehicle and "is intoxicated and by reason of that intoxication causes the death of another by accident or mistake").

**25.** *See* Section 49.09(b)(2) (person commits felony DWI if he is convicted of DWI and it is shown that he has two prior DWI convictions).

**26.** Under the pre–1993 penal code, the DWI version of involuntary manslaughter was a third-degree felony. *See* Former Section 19.05(c). This offense (now defined as intoxi-

cation manslaughter) is currently a second-degree felony. *See* Section 49.08(b).

**27.** Appellant claims it is significant that there is no history before and after 1993 of felony DWI being used as the underlying felony in a felony-murder prosecution. We, however, tend to agree with the State's response that this might in large part be due to this Court's erroneous decision in *Rodriquez*.

**28.** In addition, Section 19.02(b)(3) and Section 49.08(a) do not necessarily proscribe the same conduct. A person, who causes the death of another during the commission of a misdemeanor DWI could be prosecuted as a second-degree felon under Section 49.08(a), but not as a first-degree felon under Section 19.02(b)(3). *See* Sections 49.04; 49.09(a). The Legislature could have also reasonably determined that a person (such as appellant), who has two prior DWI convictions and causes the death of another during the commission of another DWI, could be prosecuted as a second-degree felon under Section 49.08

Appellant argues that this interpretation of these 1993 legislative changes not making Chapter 49 the exclusive domain of DWI homicides has the effect of allowing intoxication manslaughter to form the basis of a felony-murder prosecution thereby resulting in the felony-murder rule "swallowing up" intoxication manslaughter. *See Lawson,* 64 S.W.3d at 398 (Cochran, J., concurring) (if involuntary manslaughter could form the basis of a felony-murder prosecution, the "offense of involuntary manslaughter would be swallowed up by the felony murder rule").[29] The State argues that this argument is immaterial because "appellant was charged with felony murder based on felony DWI, not based on intoxication manslaughter." The State also argues that the plain language of Section 19.02(b)(3) exempts only manslaughter and that felony DWI is neither manslaughter nor a lesser included offense of man-

slaughter. *See Johnson,* 4 S.W.3d at 255 (Section 19.02(b)(3) exempts from the felony-murder rule "not only manslaughter, but also lesser included offenses of manslaughter").

Appellant's argument is immaterial **unless** felony DWI is a lesser included offense of intoxication manslaughter. If felony DWI is a lesser included offense of intoxication manslaughter, then the question of whether Section 19.02(b)(3) should be interpreted as allowing intoxication manslaughter to form the basis of a felony-murder prosecution would be squarely presented in this case. The resolution of that question would be necessary to the decision in this case, because, if intoxication manslaughter would be excluded from a felony-murder prosecution, then, presumably, under *Johnson,* any lesser included offense of intoxication manslaughter would

or as a first-degree felon under Section 19.02(b)(3). While there may be some overlap in DWI homicide cases between Section 19.02(b)(3) and Section 49.08(a), these two provisions do not entirely proscribe the same conduct, because conduct proscribed by the latter provision will not always be proscribed by the former provision.

**29.** The State disagrees that our interpretation of these 1993 legislative changes has the effect of allowing the felony-murder rule to swallow up intoxication manslaughter. The State argues:

> Nevertheless, if the appellant is claiming that intoxication manslaughter could always be tried as a felony murder, he is ignoring the fact that felony murder also requires the commission of an act clearly dangerous to human life, which is not a part of intoxication manslaughter. Not every person who drinks and kills someone also commits acts clearly dangerous to human life such as speeding, tailgating, and weaving through traffic. Those elements transcend the crime of intoxication manslaughter and make the offender eligible for a greater punishment. More to the point of the present case, none of these actions are

necessarily part of DWI. Therefore, this Court should not presume that the Legislature intended to foreclose the prosecution of a felony murder based on felony DWI. These arguments are inconsistent with this Court's decision in *Johnson. See also* Footnote 4. This Court's decision in *Johnson* holds that a felony-murder conviction can be based upon the underlying felony without proof of an additional dangerous act beyond the underlying felony, thus supporting a decision that death occurs "in furtherance of" the commission of the underlying felony. *See also* Footnote 4. The State's arguments would resurrect the judicially created merger doctrine, which "[e]ight members of this Court explicitly rejected" in *Johnson. See Lawson,* 64 S.W.3d at 400 n. 20 (Cochran, J., concurring) (noting that in *Johnson,* eight members of this Court rejected the contention that a felony-murder conviction is prohibited unless "the defendant had committed an underlying felony plus an additional act (other than the conduct covered by the underlying felony) that was clearly dangerous to human life") and at 401 (Legislature did not limit felony-murder "to require the commission of some felony, any felony except manslaughter, *plus* an additional violent or dangerous act which causes death") (emphasis in original).

also be excluded. Thus, if felony DWI is a lesser included offense of intoxication manslaughter, then it too could not form the basis of a felony-murder prosecution.

██ We nevertheless decide that felony DWI is not a lesser included offense of intoxication manslaughter. Felony DWI requires proof of two prior DWI convictions. *See* Section 49.09(b)(1). Proof of these two prior DWI convictions are not "facts required," or included within the proof necessary, to establish intoxication manslaughter under Section 49.08(a).[30] *See* Article 37.09(1), TEX.CODE CRIM. PROC. Proof of injury or risk of injury also is not necessary to establish felony DWI. *See* Article 37.09(2), TEX.CODE CRIM. PROC. Neither felony DWI nor intoxication manslaughter require proof of a culpable mental state. *See* Article 37.09(3), TEX.CODE CRIM. PROC. And, felony DWI does not consist of an attempt to commit intoxication manslaughter or is "otherwise included" in intoxication manslaughter. *See* Article 37.09(4), TEX.CODE CRIM. PROC. Having decided that felony DWI is not a lesser

included offense of intoxication manslaughter, it is unnecessary to decide whether intoxication manslaughter can form the basis of a felony-murder prosecution.

We also agree with the State that felony DWI is neither manslaughter nor a lesser included offense of manslaughter. In this case, therefore, we give effect to the plain language of Section 19.02(b)(3) exempting only manslaughter as the underlying felony for felony-murder.[31]

The dissenting opinion would hold that felony DWI cannot be the underlying felony in a felony-murder prosecution. The dissenting opinion apparently would decide that every DWI homicide should be prosecuted exclusively as an intoxication manslaughter[32] under an application of the *in pari materia* rule of statutory construction, codified in Section 311.026, TEX. GOV'T CODE. *See* Dissenting op. at 2; *Ex parte Smith,* 185 S.W.3d 887, 889 (Tex.Cr.App. 2006) (*in pari materia* doctrine is a rule of statutory construction for determining

30. Section 49.08(a) defines intoxication manslaughter as a person who operates a motor vehicle while intoxicated "and by reason of that intoxication causes the death of another by accident or mistake."

31. The record in this case reflects that the jury was also instructed on the lesser-included offense of felony DWI. This Court, therefore, could reform the judgment in this case to reflect a conviction for third-degree felony DWI, if the felony-murder conviction was set aside. *See Collier v. State,* 999 S.W.2d 779, 782 (Tex.Cr.App.1999).

The record also reflects that appellant pled "true" to two enhancement paragraphs each alleging that appellant had previously been convicted of felony unauthorized use of a motor vehicle. Appellant was, therefore, subject to a punishment range of 25 to 99 years, or life. *See* Section 12.42(d), TEX. PEN.CODE, (setting out this punishment range if it is shown on the trial of a "felony offense" that the defendant has previously been convicted of

"two felony offenses"). With a finding of "true" to these two enhancement paragraphs, appellant would have been subject to the same punishment range (25 to 99 years, or life) even if he was convicted of third-degree felony DWI or second-degree felony intoxication manslaughter, neither of which require proof of a culpable mental state. *See* Section 49.11(a).

32. This arguably would mean that a DWI homicide could not be prosecuted as manslaughter or criminally negligent homicide. Arguably, this also would mean that a DWI assault with serious bodily injury could not be prosecuted as an aggravated assault and could only be prosecuted as an intoxication assault. However, in *Burke v. State,* this Court unanimously rejected this latter contention. *See Burke v. State,* 28 S.W.3d 545, 549 (Tex.Cr.App.2000) (statutes defining aggravated assault with bodily injury and intoxication assault are not *in pari materia*, therefore, state had discretion as to which offense to prosecute).

which statutory provision controls when a general statutory provision and a more specific statutory provision deal with the same subject matter and they irreconcilably conflict).[33]

This rule of statutory construction, however, applies only if a "general" provision and a "specific" provision "irreconcilably conflict." *See id.* Two statutes irreconcilably conflict when only one of them can apply to a particular situation. Two statutes do not irreconcilably conflict when, as in this case, both of them can apply to a particular situation. Presiding Judge Keller's concurring opinion in this Court's recent decision in *Nesbit v. State* provides an example of two statutes that irreconcilably conflict. *See Nesbit v. State,* 227 S.W.3d 64, 69 (Tex.Cr.App., 2007) (Keller, P.J., concurring). That concurring opinion concludes that, when computing the expiration day of a probationary term, the Code Construction Act for computing time excludes the first day, while the probation statute includes the first day. *See id.* These statutory provisions, therefore, irreconcilably conflict because both statutes (one including the first day and the other excluding it) cannot apply to computing the expiration of a probationary term. That situation is not presented here. That Section 19.02(b)(3) and Section 49.08(a) might, in some situations, apply to the same conduct does not mean that they irreconcilably conflict. *See Pembleton,* 978 S.W.2d at 355–56; *see also* Footnote 28.

■ In addition, the *in pari materia* rule of statutory construction "applies where one statute deals with a subject in comprehensive terms and another deals with a portion of the same subject in a more definite way." *See Alejos v. State,* 555 S.W.2d 444, 450 (Tex.Cr.App.1977) (op.

on reh'g). The "rule is not applicable to enactments that cover different situations and that were apparently not intended to be considered together." *See id.* (emphasis removed); *see also Burke,* 28 S.W.3d at 547 (similarity of purpose or object is the most important factor in assessing whether two provisions are *in pari materia*). The two statutes at issue here (felony murder and intoxication manslaughter) obviously cover different situations and apparently were not intended to be considered together. *See Burke,* 28 S.W.3d at 549 (no indication that general assault statute and more specific intoxication assault statute "were intended to be considered together"). The felony-murder statute covers a variety of homicides during the commission of a felony while the intoxication manslaughter statute is specifically limited to a DWI homicide. *See Alejos,* 555 S.W.2d at 449–51 (state "properly exercised its option" to prosecute defendant under general statute of "evading arrest" even though defendant could also have been charged under more specific statute of "fleeing or attempting to elude a police officer" because these two statutes were not *in pari materia*). Finally, we also note that at least two other intermediate appellate courts have rejected the claim that the felony-murder statute and the intoxication manslaughter statute are *in pari materia. See Hollin v. State,* 227 S.W.3d 117 (Tex. App.-Houston [1st Dist.], 2006, pet. ref'd); *Strickland v. State,* 193 S.W.3d 662, 665–69 (Tex.App.-Fort Worth 2006, pet. ref'd).

The judgment of the Court of Appeals is affirmed.

JOHNSON, J., filed a dissenting opinion in which, HOLCOMB, J., joined.

WOMACK, J., not participating.

---

**33.** The dissenting opinion also suggests that this opinion holds that intoxication manslaughter can be the underlying felony in a felony-murder prosecution. *See* Dissenting op. at 314–15. This opinion, however, does **not** so hold and very carefully points out that

JOHNSON, J., filed a dissenting opinion in which HOLCOMB, J., joined.

The state charged applicant with felony murder based on an allegation that he was committing felony driving while intoxicated when he caused an accident that resulted in a death. TEX. PEN.CODE § 19.0(b)(3). Appellant's ground for review asks, "Can a felony murder conviction be based on an underlying felony that expressly requires no *mens rea*, despite the fact that in a felony-murder conviction, the *mens rea* for the act of murder is supplied by the *mens rea* of the underlying felony?" The state responds that appellant's argument lacks merit because the felony-murder statute permits all felonies to be used as the predicate offense, excepting only manslaughter and its lesser-included offenses. Secondarily, the state argues that the charged predicate offense here is not intoxication manslaughter, but felony driving while intoxicated.

I would argue that using felony driving while intoxicated as the predicate for felony murder is barred by TEX. GOV'T CODE § 311.026. Special or Local Provision Prevails Over General.

(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

The felony-murder section is general, applying to a wide range of offenses. The intoxication manslaughter statute deals specifically with causing a death as a result of driving while intoxicated, whether the DWI offense is the first, third, or twenty-third. Ergo, the special provision, § 49.08, should prevail-a death that result from driving while intoxicated must be prosecuted as intoxication manslaughter.[1] This interpretation is in accord with § 311.1026 regardless of whether it is considered under subsection (a) or subsection (b). Under subsection (a), effect can be given to both provisions by restricting felony murder to offenses outside of Chapter 49. We then have no issue of where the *mens rea* for murder originates, yet each provision is given effect. Under subsection (b), the special provision, which was created after the felony-murder statute, prevails for conduct covered by Chapter 49. The question then becomes whether an amendment at the same time as the creation of the new, special provision manifests an intention that the general provision prevail.

Until 1993, Texas Penal Code Chapter 19 defined homicide as capital murder (§ 19.03), murder (§ 19.02), voluntary manslaughter (§ 19.04), involuntary manslaughter (§ 19.05), and criminally negligent homicide (§ 19.07). Involuntary manslaughter covered both "recklessly causes the death of an individual" and "by accident or mistake when operating a motor vehicle, airplane, helicopter, or boat while intoxicated and, by reason of such intoxication, causes the death of an individual." Section 19.02(b)(3) specifically excluded both voluntary and involuntary manslaughter as the underlying offense when the indictment alleged what has come to be known as felony murder.

it is unnecessary to decide that issue in this case.

1. While it can also be argued that felony DWI is an exception and prosecution as felony murder should be permitted, a third DWI is not a felony until it is charged as such; it may be charged as a felony or a misdemeanor, at the prosecutor's discretion. It is not known at the time of the offense whether the offense is a felony or a misdemeanor.

In the 1993 regular session, the Legislature rewrote the Penal Code, with the new provisions to become effective on September 1, 1994, a year after both the usual effective date for new legislation and the date on which other changes to the Penal Code went into effect. The new Penal Code created Chapter 49, Intoxication and Alcoholic Beverage Offenses, and drastically reordered Chapter 19.

In Chapter 19, only capital murder and criminally negligent homicide escaped redefinition. Voluntary manslaughter was subsumed by murder as an issue on sudden passion during the punishment phase of trial. Involuntary manslaughter as defined in § 19.05(a)(1) was renamed manslaughter and renumbered § 19.04. Section 19.05(a)(2)[2] disappeared from Chapter 19, reappearing in the new Chapter 49 as the new offense of Intoxication Manslaughter (§ 49.08) and couched in terms almost identical to the terms used in § 19.05(a)(2).[3] Section 19.02(b)(3) reflected the reordering of Chapter 19 and again specifically excluded "manslaughter" as the underlying offense for felony murder.

The legislature redesigned the offense of manslaughter by splitting the pre–1994 offense into separate offenses as if separating conjoined twins, leaving one twin in the chapter on homicide and moving the other twin into the chapter to which it was most closely related-Intoxication and Alcoholic Beverage Offenses. The name given to the new offense indicates that the Legislature continued to consider the offense "manslaughter." The newly redefined manslaughter and newly created intoxication manslaughter, the separated twins, are the only offenses that are currently designated as "manslaughter." Nowhere in the new alignment is there evidence of a "manifest intent ... that the general provision [§ 19.02(b)(3) ] prevail." TEX. GOV'T CODE § 311.026(b).

Intoxication manslaughter was clearly excluded as a basis for felony murder when it was called § 19.05(a)(2); it is no less clearly excluded now that it is called § 49.08. To hold differently is to say that title overwhelms substance. That has never been our practice; we look to the substance in order to determine the appropriate disposition. We receive writs labeled mandamus but which are habeas corpus in substance, and we treat them as habeas corpus applications. Trial courts receive motions that are mistitled, yet dispose of them on the basis of the pleadings within the motion, not on the basis of the title. As do we. *See, e.g., Ex parte Caldwell,* 58 S.W.3d 127, 130 (Tex.Crim.App.2000).[4] This should also be true here. Intoxication manslaughter is still manslaughter, and it is specifically excluded by

---

**2.** "A person commits an offense if he: ... (2) by accident or mistake when operating a motor vehicle, airplane, helicopter, or boat while intoxicated and, by reason of such intoxication, causes the death of an individual."

**3.** "A person commits an offense if the person: (1) operates a motor vehicle in a public place, an aircraft, or a watercraft; and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake."

**4.** "Although the applicant labels his motion 'Subsequent Application for Writ of Habeas Corpus and Motion for Appointment and Compensation of Counsel and Motion for Funding of Mental Health Experts,' it is the substance of the motion that governs, not the title. The applicant makes clear that he is attempting to avail himself of the procedures in article 46.04 [Transportation to a Mental Health Facility or Residential Care Facility]. We will treat the applicant's pleading as a motion under article 46.04, just as the trial court did." *Id.*

§ 19.02(b)(3) as a basis for a charge of felony murder.

I respectfully dissent.