Opinion issued June 11, 2009









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00783-CR






KEITH KLEPPER, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 240th District Court

Fort Bend County, Texas

Trial Court Cause No. 42429A






MEMORANDUM OPINION

 A jury convicted appellant, Keith Klepper, of murder and assessed punishment
at 30 years' confinement. In three points of error, appellant contends the trial court
erred by: (1) denying his motion to suppress a confession given to police in Alabama;
(2) denying his motion to suppress a confession given to police in Texas; and (3)
refusing to instruct the jury on a lesser-included offense. In a fourth point of error,
appellant contends the evidence is legally and factually insufficient to support his
conviction. We affirm.

BACKGROUND

The Shooting 

 On May 17, 2005, a girl named Gemma called Charlie Zehler and told him that
some of her friends were interested in buying some marihuana. Charlie told Gemma
"just to send her friends over" to his house. Soon after, a girl named Jesse, appellant,
and appellant's codefendant, James Taylor, arrived at appellant's house, which he
shared with his mother, Patricia, and sister, Hope. Also present in the house at the
time was Charlie's friend, Paul Martz. While Charlie, appellant and Taylor were
discussing the marihuana and its price, appellant cocked a gun and pointed it in
Charlie's face. Paul tried to help Charlie, but Taylor also pulled a gun and pointed
it at Paul. Charlie and appellant began to struggle as Paul fled the room. Taylor then
turned his gun on Charlie as well. Charlie fell to the floor, and appellant said, "just
shoot him, just shoot him. Taylor began trying to grab Charlie's marihuana. With
Taylor distracted, Charlie grabbed a sword that he had in his closet and swung it at
appellant, striking him in the hip. Appellant fired his gun at Charlie, but missed. As
appellant and Taylor fled the house, Charlie's mother, Patricia, grabbed at Taylor,
who turned around and shot her. Patricia died later that evening from a gunshot
wound to the forehead.

The Alabama Confession

 Later that same day, in Gulf Shores, Alabama, appellant's father contacted the
Gulf Shores Police Department and told them that he wanted to bring his son in to
discuss a murder that had been committed in Sugar Land, Texas. The next afternoon,
appellant, his father, and his stepmother met with Officer Franklin of the Gulf Shores
Police Department. Officer Franklin met with the three in the officers' break room. 
Appellant's father did most of the talking, and he relayed to Officer Franklin what
appellant had told him about the shooting.

 Officer Franklin and appellant then went into an interview room so that they
could talk about what happened in Sugar Land. Officer Franklin was in plain clothes
and did not carry his weapon. Franklin explained to appellant that he was not under
arrest, that Franklin did not have a warrant for appellant's arrest, and that it was
Franklin's understanding that appellant was there of his own free will. Franklin then
read appellant his Miranda (1) warnings. Appellant said that he understood the
warnings, which he then initialed.

 Franklin talked with appellant for approximately an hour and then took a break
to change the tape on the machine that was recording their conversation. During the
break, appellant went to the restroom and visited with his parents, who were still in
the break room. The entire interview lasted one hour and 40 minutes, and, during the
course of the interview, appellant admitted that he knew Taylor had a gun when they
went to Charlie's house.

 After the interview was concluded, Officer Franklin contacted the Sugar Land
Police Department and told them about the interview. The Sugar Land Police
Department then prepared a warrant for appellant's arrest.

The Texas Confession

 On June 2nd, Detective Thompson of the Sugar Land Police Department, drove
to Alabama to pick up appellant. When they arrived back in Texas, Thompson
unhandcuffed appellant and took him to an interview room. Thompson made the
following statements on the video before obtaining appellant's confession:

 Today is June 3rd. It's about 12:15 a.m. on June 3rd, and I need to read
something to you real quick before I get started.


 Keith, you have the right to remain silent and not make any statement at
all. Any statement you make may be used against you at your trial. Any
statement you make you may be used as evidence against you in court. 
You have the right to have a lawyer present to advise you during any
questioning. If you are unable to employ a lawyer, one will be
appointed to you. You have the right to terminate any interview at any
time.


 Having read you your rights, do you wish, by shaking you head up and
down, saying "yes," or side to side, saying "no," to tell your side of the
story?


Appellant responded, "yes, sir," and then gave a statement to police that lasted
approximately 30-40 minutes. In this statement, appellant admitted that he went to
the house with the intention of robbing Charlie by taking his marihuana.

MOTION TO SUPPRESS CONFESSIONS

 In his first two points of error, appellant contends the trial court erred in
denying his motion to suppress both his Alabama confession and his Texas
confession.

Standard of Review

 We review the trial court's ruling on a motion to suppress evidence for abuse
of discretion, using a bifurcated standard. See Guzman v. State, 955 S.W.2d 85,
88-89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's
findings of historical fact that are supported by the record and to mixed questions of
law and fact that turn on an evaluation of credibility and demeanor. Id. at 89. We
review de novo the trial court's determination of the law and its application of law to
facts that do not turn upon an evaluation of credibility and demeanor. Id. When the
trial court has not made a finding on a relevant fact, we imply the finding that
supports the trial court's ruling, so long as it finds some support in the record. State
v. Kelly, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); see Moran v. State, 213
S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if
it is reasonably supported by the record and is correct under any theory of law
applicable to the case. State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006) 

Alabama Confession

 Appellant contends the Alabama confession was taken in violation of his rights
under Miranda and Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2006). The
State responds that Miranda and article 38.22 are not applicable because appellant
was not in custody at the time he gave his statement. We agree.

 Custodial interrogation is "questioning initiated by law enforcement officers
after a person has been taken into custody or otherwise deprived of his freedom of
action in any significant way." Miranda, 384 U.S. at 444, 86 S. Ct. at 1612. The
determination of custody is entirely objective, and the subjective intent of law-enforcement officials is not relevant unless communicated through their words or
actions to the suspect. Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App.
1966). Station-house questioning, as occurred here, does not in and of itself
constitute custodial interrogation. Id. at 255. Simply being the focus of a criminal
investigation does not amount to being in custody. Martinez v. State, 131 S.W.3d 22,
32 (Tex. App.--San Antonio 2003, no pet.) When a person voluntarily accompanies
officers to an interview, and he knows or should know that the police officers suspect
he may be implicated in the crime under investigation, he is not "restrained of his
freedom of movement" and is not in custody. Shiftlet v. State, 732 S.W.2d 622, 630
(Tex. Crim. App. 1985).

 However, an interview that begins as noncustodial may escalate into a custodial
interrogation because of police conduct during the encounter. Dowthitt, 931 S.W.2d
at 255. In determining whether a noncustodial encounter has escalated into custodial
interrogation, we look to the four factors discussed in Dowthitt: (1) when the suspect
is physically deprived of his freedom of action in any significant way; (2) when law
enforcement officers tell a suspect that he cannot leave; (3) when law enforcement
officers create a situation that would lead a reasonable person to believe that his
freedom of movement has been significantly restricted; and (4) when there is probable
cause to arrest and law enforcement officers do not tell the suspect that he is free to
leave. Id. at 255.

 In this case, appellant was not deprived of his freedom in any significant way. 
He came to the police station of his own accord and without any request from the
police. While at the station, he first talked with police in the break room and then
later in an interview room. Appellant was never told that he could not leave. In fact,
Officer Franklin specifically told appellant that he was not under arrest and that there
was no warrant for his arrest. There were no circumstances indicating to appellant
that he could not leave. Officer Franklin was not in uniform and did not carry a
weapon. Appellant and his family were never placed under guard. Appellant was
allowed to take breaks and to visit with his family during those breaks. The
encounter was not unreasonably long--just one hour and 40 minutes. Further, police
did not have probable cause to arrest appellant until after he made his statement. In
fact, after being contacted by appellant about his desire to talk to them, Gulf Shores
Police had to verify that there had been a shooting in Texas.

 Therefore, the record supports the State's assertion that appellant was not in
custody when he gave his statement to Gulf Shores Police. As such, Miranda and
article 38.22 are not applicable.

 Thus, the trial court did not abuse its discretion in denying appellant's motion
to suppress the Alabama statement. Accordingly, we overrule point of error one.
Texas Confession

 Appellant also argues that his Texas confession was involuntary for the same
reasons that he gave for suppressing his Alabama confession. He admits that he was
read his Miranda and statutory warnings, but contends that his waiver of those rights
was not voluntary. Specifically, appellant argues that agreeing to "tell his side of the
story" was not a voluntary waiver of his Miranda rights. The State concedes that
police obtained the Texas confession while appellant was in custody, but argues that
appellant was properly given his Miranda and statutory warnings and that his
subsequent statement was not involuntary. 

 Any waiver of Miranda rights on behalf of an accused must be made
knowingly, intelligently, and voluntarily. See Miranda, 384 U.S. at 475, 86 S. Ct. at
1628. Whether an accused has effectively waived his rights has two distinct
inquiries: first, the relinquishment of the right must have been voluntary in the sense
that it was the product of a free and deliberate choice rather than intimidation,
coercion, or deception. Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141
(1986). Second, the waiver must have been made with a full awareness of both the
nature of the right being abandoned and the consequences of the decision to abandon
it. Id. An express waiver is not necessary; waiver may be inferred from the actions
and words of the person interrogated. North Carolina v. Butler, 441 U.S. 369, 373,
99 S. Ct. 1755, 1758 (1979); Rocha v. State, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000). 
We consider the totality of the circumstances when determining whether an accused
has waived his Miranda rights. Fare v. Michael C., 422 U.S. 707, 725, 99 S. Ct.
2560, 2571-72 (1979). Simply making an inculpatory statement cannot alone
indicate a waiver of the right to remain silent, but a statement of "desire to talk" to
police, accompanied by an inculpatory statement can show the waiver of the right to
remain silent. See Butler, 441 U.S. at 372-73, 99 S. Ct. at 1756-57; McDonald v.
Lucas, 677 F.2d 518, 521-22 (5th Cir. 1982).

 First, nothing in the record indicates that appellant was coerced, intimidated,
or deceived into giving a statement. Detective Thompson testified that he made no
promises or threats to appellant. Appellant, in fact, does not argue that he was
coerced, threatened, or deceived into waiving his rights. 

 Second, the recorded confession clearly shows that Detective Thompson read
appellant his Miranda and statutory warnings, and, immediately after being told that
he had the right to remain silent and that anything he said could be used against him
in court, appellant verbally acknowledged that he wished to "tell his side of the
story." There was also evidence in the record that during the ride from Florida to
Texas, appellant indicated that he wanted to talk about the event and was told by
Detective Thompson that he would have the opportunity to tell his side of the story
later. From this sequence of events, the trial court could have reasonably concluded
that appellant was aware of his rights, the consequences of waiving those rights, and
that appellant did, in fact, waive his rights by choosing to continue to speak with
police after being warned that he did not have to do so. 

 Because he had been in police custody for several days, there was no issue of
intoxication impairing appellant's judgment. Additionally, there was no issue of
sleep deprivation. Detective Thompson testified that appellant slept for much of the
trip from Alabama to Texas. Despite appellant's claims that he suffers from attention
deficit hyperactivity disorder and bipolar disorder and has only a ninth grade
education, in appellant's statement, he appears coherent and fully able to understand
the questions. His responses are articulate. Thompson testified that appellant
appeared to understand the warnings that were read to him and that he never indicated
that he wished to quit talking or to have an attorney present. 

 Thus, considering the totality of the circumstances, we cannot conclude that the
trial court abused its discretion in ruling that appellant's Texas statement was
voluntarily given after waiving his Miranda rights. Accordingly, we overrule point
of error two.

LESSER-INCLUDED OFFENSE


 In point of error three, appellant contends the trial court erred by refusing to
instruct the jury on the lesser-included offense of manslaughter. Specifically, he
argues that there was evidence that Taylor fired his gun recklessly and without the
specific intent required for murder.

 We use a two-step analysis to determine whether an appellant is entitled to a
lesser-included offense instruction. Hall v. State, 225 S.W.3d 524, 528 (Tex. Crim.
App. 2007); Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993).
First, the lesser offense must come within article 37.09 of the code of criminal
procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); Moore v. State,
969 S.W.2d 4, 8 (Tex. Crim. App. 1998). An offense is a lesser included offense if
(1) it is established by proof of the same or less than all the facts required to establish
the commission of the offense charged; (2) it differs from the offense charged only
in the respect that a less serious injury or risk of injury to the same person, property
or public interest suffices to establish its commission; (3) it differs from the offense
charged only in the respect that a less culpable mental state suffices to establish its
commission; or (4) it consists of an attempt to commit the offense charged or an
otherwise included offense. See Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon
1981). Our analysis does not depend on the evidence to be produced at the trial, but
is performed by comparing the elements of the offense as they are alleged in the
indictment or information with the elements of the potential lesser-included offense. 
Hall, 225 S.W.3d at 535-36.

 Second, some evidence must exist in the record that would permit a jury to
rationally find that if the appellant is guilty, he is guilty only of the lesser offense.
Hall, 225 S.W.3d at 536; Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App.
2005); Rousseau, 855 S.W.2d at 672-73. The evidence must be evaluated in the
context of the entire record. Moore, 969 S.W.2d at 8. There must be some evidence
from which a rational jury could acquit the appellant of the greater offense while
convicting him of the lesser-included offense. Id. The court may not consider
whether the evidence is credible, controverted, or in conflict with other evidence. Id.
Anything more than a scintilla of evidence may be sufficient to entitle a defendant to
a lesser charge. Hall, 225 S.W.3d at 536. Relying on Kuykendall v. State, 609 S.W.2d 791, 796 (Tex. Crim. App. 1981),
appellant argues that manslaughter can be a lesser-included offense of felony murder
because manslaughter requires only a reckless mens rea rather than an intentional
mens rea. He further argues that the evidence raised the issue of manslaughter
because there was evidence that Taylor acted recklessly, not intentionally, when he
turned and fired towards the house without first aiming.

 It is true that Kuykendall holds that criminally negligent homicide is a potential
lesser-included offense of felony murder when the underlying felony is a robbery. 
See 609 S.W.2d at 797-98. Because manslaughter and criminally negligent homicide 
differ only in the required mens rea, (2) it follows that, under Kuykendall, manslaughter
is also a potential lesser-included offense under similar circumstances. Jones v. State,
100 S.W.3d 1, 6 (Tex. App.--Tyler 2002, pet. ref'd).

 In Kuykendall, the court relies on the theory of transferred intent to supply a
mens rea for the murder committed during the robbery. 609 S.W.2d at 795-96. In
other words, the culpable mental state for the act of murder was supplied by the
mental state accompanying the underlying robbery felony giving rise to the murder. 
Id. Because the robbery transferred an intentional mens rea to the murder, criminally
negligent homicide, which contained a lesser mens rea, was a potential lesser-included offense. Id. at 796. In so holding, the Kuykendall court relied on Rodriguez
v. State, which stated:

 [T]he culpable mental state for the act of [felony] murder is supplied by
the mental state accompanying the underlying committed or attempted
felony giving rise to the act. The transference of the mental element
establishing criminal responsibility for the original act to the resulting
act conforms to and preserves the traditional mens rea requirement of
the criminal law.


548 S.W.2d 26, 28-29 (Tex. Crim. App. 1977). 


 However, the Court of Criminal Appeals has overruled "that portion of the
holding in Rodriguez that a culpable mental state is required for 'the act of murder'
in a felony-murder prosecution and that the mental state of the underlying felony
supplies this culpable mental state." Lomax v. State, 233 S.W.3d 302, 307 (Tex.
Crim. App. 2007). The Lomax court expressly disavowed the theory of transferred
intent and held that "any culpable mental state accompanying the underlying felony
cannot supply the culpable mental state for 'the act of murder,' because the very
nature of the felony-murder rule is that there is no culpable mental state 'for the act
of murder.'" Id. at 306-07. The court held that section 19.02(b)(3)--the felony
murder statute--plainly dispenses with a culpable mental state. Id. at 305.

 With this in mind, we compare the elements of the offense as they are alleged
in the indictment or information with the elements of the potential lesser-included
offense. Hall, 225 S.W.3d at 535-36.

 Under the indictment in this case, the State was required to show that appellant:

 (1) intentionally or knowingly committed or attempted to commit
the offense of aggravated robbery by then and there, while in the
course of committing theft and with the intent to obtain and maintain
control of property of Charles Zehler, to wit: United States Currency or
marijuana without the effective consent of the said Charles Zehler and
with intent to deprive the said Charles Zehler of said property, did then
and there by using and exhibiting a deadly weapon, to wit: a firearm
intentionally and knowingly threaten Charles Zehler with imminent
bodily injury and death, and


 (2) while in the course of and furtherance of the commission or
attempted commission of said offense and while in immediate flight
from the commission of or the attempt to commit said offense did
commit an act clearly dangerous to human life, to wit: discharge a
firearm in the direction of Patricia Zehler and


 (3) did thereby cause the death of Patricia Zehler.


 In contrast, the statutory elements of manslaughter would require proof that
appellant recklessly caused the death of Patricia Zehler. See Tex. Penal Code Ann.
§ 19.04 (Vernon 2003) (Emphasis added).

 As made clear by Lomax, felony murder attaches no culpable mental state to
the death of an individual. See 223 S.W.3d at 306-07. Therefore, manslaughter
actually requires proof of a higher culpable mental state for the death of an individual
than felony murder requires. As such, the elements of the requested lesser-included
offense are not established by proof of the same or less than all of the facts required
to establish the commission of the charged offense, nor does the proposed lesser-included offense differ from the offense charged only in the respect that a less
culpable mental state suffices to establish its commission. See Tex. Code Crim.
Proc. Ann. art. 37.09.

 Under prong one of the test set forth in Hall, manslaughter cannot be a lesser-included offense of felony murder. Thus, we need not address prong two of Hall. 
See Hall, 225 S.W.3d at 535-36.

 We overrule point of error three.

SUFFICIENCY OF THE EVIDENCE


Standards of Review & Applicable Law

 
When evaluating the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789 (1979);
Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). We do not resolve
any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses
because this is the function of the trier of fact. See Dewberry v. State, 4 S.W.3d 735,
740 (Tex. Crim. App. 1999); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim.
App. 1992); see also Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). 
Instead, our duty is to determine whether both the explicit and implicit findings of the
trier of fact are rational by viewing all of the evidence admitted at trial in the light
most favorable to the verdict. See Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim.
App. 2000); Adelman, 828 S.W.2d at 422. In so doing, we resolve any
inconsistencies in the evidence in favor of the verdict. See Matson, 819 S.W.2d at
843.

 In a factual-sufficiency review, we view all of the evidence, both for and
against the finding, in a neutral light and set aside the verdict only if the proof of guilt
is so obviously weak as to undermine confidence in the jury's determination, i.e., if
the verdict seems "clearly wrong and manifestly unjust" or the proof of guilt,
although legally sufficient, is nevertheless against the great weight and preponderance
of the evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).
We will reverse the jury's verdict only if the record clearly shows that a different
result is required to prevent a manifest injustice. See id. at 416-17; see also Johnson
v. State, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000). In conducting a factual-sufficiency
review, we must also discuss the evidence that, according to the appellant, most
undermines the jury's verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003).

 A jury is in the best position to evaluate the credibility of witnesses, and we are
required to afford "due deference" to the jury's implicit credibility determinations.
Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). The jury is free to
accept or to reject any or all of the evidence presented by either side. See Saxton v.
State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Reconciling conflicting
testimony is within the exclusive province of the jury. See Goodman v. State, 66
S.W.3d 283, 287 (Tex. Crim. App. 2001); see also Cleveland v. State, 177 S.W.3d
374, 380 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd).

 To convict appellant of the charged offense, the State was required to prove
beyond a reasonable doubt that appellant intentionally or knowingly committed or
attempted to commit the offense of aggravated robbery, and, in the course of and
furtherance of the commission or attempted commission of aggravated robbery, or in
immediate flight from the commission or attempted commission of aggravated
robbery, committed or attempted to commit an act clearly dangerous to human life,
which cause the death of Patricia Zehler. See Tex. Penal Code Ann. § 19.02(b)(3)
(Vernon 2006). The jury was also charged on the law of parties. See Tex. Penal
Code Ann. § 7.02 (Vernon 2006).

Legal Sufficiency

 The jury heard evidence that appellant and Taylor went to Charlie's house
intending to rob him by taking his marihuana. While there, appellant and Taylor
pulled and fired their weapons during a confrontation with Charlie. As they were
fleeing, Taylor turned and fired a shot, which struck and killed Patricia Zehler. 
Appellant confessed to his participation in the robbery and to the fact that he knew
that Taylor was armed. Appellant was seen after the robbery with marihuana that he
took from Charlie's house. He also had a wound that matched the injury Charlie said
that he had inflicted on the perpetrator with a sword. From this evidence, any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. See Drichas, 175 S.W.3d at 798. Accordingly, we overrule
appellant's legal sufficiency challenge.

Factual Sufficiency

 In support of his claim that the evidence is factually insufficient, appellant
argues that, while he knew Taylor was armed, he had no reason to believe that Taylor
would aimlessly discharge his weapon as they were fleeing. 

 Relying on Tippitt v. State, 41 S.W.3d 316, 325 (Tex. App--Fort Worth 2001,
no pet.), appellant argues that the evidence is insufficient to show that he should have
anticipated that the shooting was a possible result of his and Taylor's agreement to
rob Charlie. We disagree. Tippitt is distinguishable because, in that case, there was
no evidence to show that the defendant knew that his codefendant was armed when
they committed the robbery. Id. at 325-26. In this case, appellant admitted that he
knew that Taylor was armed. Indeed, appellant himself was armed and fired the first
shots. 

 Therefore, we cannot say that the verdict seems clearly wrong and manifestly
unjust or the proof of guilt is against the great weight and preponderance of the
evidence. See Flores v. State, 681 S.W.2d 94, 96 (Tex. App.--Houston [14th Dist.]
1984) (holding murder should have been anticipated as a possible result of burglary
when appellant knew companion had a gun), aff'd, 690 S.W.2d 281 (Tex. Crim. App.
1985). Accordingly, we overrule appellant's factual sufficiency challenge.

 We overrule point of error four.

CONCLUSION

 We affirm the judgment of the trial court.





 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).
1. 
2. 
 
 §§ -