IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1769-06, 1770-06





EDWIN GLEN BIGON, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S & STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


LAMPASAS COUNTY





 Meyers, J., delivered the opinion of the Court, in which Price,
Womack, Johnson, Keasler, Hervey, Holcomb, and Cochran, JJ., joined. 
Keller, P.J., filed a dissenting opinion.


O P I N I O N 



 In two separate indictments, (1) Appellant was indicted for the following offenses: two
counts of felony murder, with the underlying felony of driving while intoxicated with a
passenger under 15 years of age; two counts of intoxication manslaughter; and two counts
of manslaughter. (2) After a one-day bench trial, Appellant was convicted on all six counts,
and the judge sentenced him to 18 years' confinement for each count, to be served
concurrently. Appellant appealed the trial court's admission of expert testimony, medical
records, and test results. Appellant also challenged the legal and factual sufficiency of the
evidence supporting his convictions. The court of appeals affirmed the two convictions for
felony murder, but vacated the other four convictions on the unassigned error of violation
of double-jeopardy guarantees of the Eighth Amendment of the United States Constitution. 
The court of appeals also held that the trial court did not err in admitting the expert's
testimony, the medical records, or test results, and held that the evidence was legally and
factually sufficient to support the convictions. Bigon v. State, Nos. 03-05-00692-CR &
03-05-00693-CR, 2006 Tex. App. LEXIS 8756 (Tex. App. - Austin Oct. 4, 2006)(mem.
op., not designated for publication). We granted both Appellant's and State's petitions for
discretionary review. We affirm the decision of the court of appeals.

FACTS

 Appellant was driving home from a trip with his 8-year-old son. At approximately
8:35 p.m., while cresting a hill, Appellant crossed the middle line of the roadway, slamming
head-on into an oncoming vehicle. Both Appellant and his son were injured and two
occupants of the other vehicle, the driver and her infant daughter, were pronounced dead at
the scene of the accident.

 Appellant and his son were airlifted to the hospital to receive treatment for their
injuries. At 9:58 p.m., Appellant's blood was drawn by the hospital for lab purposes, and
the hospital performed a serum blood analysis to determine the blood-alcohol
concentration. Based upon witness reports, (3) the officers responding to the accident scene
believed that Appellant's erratic driving had caused the accident. As a result, a second
blood sample was taken at approximately 11:35 p.m., at which time Appellant was informed
that he was under arrest. (4)

 Dr. Charles Mott, at the DPS laboratory, analyzed the second blood sample for
blood-alcohol content using whole-blood analysis. Serum blood analysis and whole-blood
analysis report results use different terminology. Dr. Mott converted the results of the
hospital's serum blood analysis into whole-blood analysis terminology and performed a
retrograde extrapolation.COURT OF APPEALS

 In a memorandum opinion, the court of appeals affirmed the convictions for felony
murder, vacated the intoxication manslaughter and manslaughter convictions, and overruled
all of Appellant's grounds for appeal. Appellant argued six points of error in his appeal, but
did not raise the double-jeopardy issue. Although neither party argued this error on appeal,
the court of appeals determined that it could be raised for the first time on appeal because
it was apparent from the face of the record that the totality of Appellant's convictions
stemming from the two indictments constituted double jeopardy.

 Following our decision in Ex parte Ervin, the court held that there was a multiple-
punishments violation. 991 S.W.2d 804 (Tex. Crim. App. 1999). Because the offenses of
intoxication manslaughter and manslaughter involved the same victims, imposing
convictions for both violated the double-jeopardy clause. Id. at 817. The court decided
that since there was only one act alleged in the indictments that could support the
convictions on all three counts, Appellant could not be punished for all three offenses. The
court determined that, in this case, felony murder is the same offense as intoxication
manslaughter and manslaughter for double-jeopardy purposes.

 To remedy the violation, the court applied the "most serious offense" test, set out in
Landers v. State, to decide which convictions to vacate. (5) 957 S.W.2d 558 (Tex. Crim. App.
1997). Based on this test, the court of appeals reversed Appellant's convictions for
manslaughter and intoxication manslaughter and affirmed the convictions for felony
murder.

 The second issue that the court addressed was the trial court's denial of Appellant's
motion to quash the indictments. Appellant argued that his actions did not constitute a
charge of felony murder and that the indictments were flawed because the State never
alleged a culpable mental state. The court of appeals conducted a de novo review of the
sufficiency of the indictment. The court held that a felony murder charge does not require
proof of a culpable mental state because the underlying felony provides the culpable mental
state. In this case, the underlying felony was felony DWI for driving while intoxicated in a
public place with a passenger younger than 15 years of age. Tex. Pen. Code Ann. §49.045. 
Because this statute clearly dispenses with a culpable mental state, the court held that the
felony murder charge also did not require a culpable mental state and upheld the trial
court's decision not to quash the indictments.

 Next, the court of appeals considered Appellant's argument that the evidence was
legally and factually insufficient to support the murder convictions. Appellant alleged that
the evidence was insufficient to show that he acted recklessly or that the act of hitting the
other vehicle head-on was "in furtherance" of the underlying felony. The court of appeals
stated that, under our holding in Johnson v. State, 4 S.W.3d 254, 258 (Tex. Crim. App.
1999), "the primary concern of the 'course and furtherance' requirement" was the merger
of the offenses, which did not occur in this case. The court concluded that a fact-finder
could rationally have found beyond a reasonable doubt that Appellant committed an act
clearly dangerous to human life in furtherance of felony DWI by driving a heavily loaded
SUV over the center line and into oncoming traffic.

 Finally, Appellant alleged that the trial court abused its discretion in admitting the
testimony of Dr. Charles Mott because the testimony was unreliable and did not meet the
standards set out in Mata v. State, 46 S.W.3d 902, 908-909 (Tex. Crim. App. 2001). The
court of appeals held that Dr. Mott explained retrograde extrapolation in a clear and
understandable manner, explained his testing methods in a straightforward way, clarified
which factors he did know about Appellant, and articulated the reasons for his assumption
that Appellant was in the elimination phase of alcohol consumption. For all of these
reasons, the court concluded that it was not an abuse of discretion to admit Dr. Mott's
testimony.

 Appellant's felony murder convictions were affirmed, and the other four convictions
were vacated. Both Appellant and the State filed a petition for discretionary review, each
requesting three grounds for review. We granted both petitions to consider the following
six grounds for review:

 Appellant's Grounds:

 1. Whether a felony murder conviction can be based upon an underlying felony that
expressly requires no culpable mental state.

 2. Whether the "act clearly dangerous to human life" has to be "in furtherance" of
the underlying felony in order to be convicted of felony murder.

 3. Whether Mata precludes the results of a retrograde extrapolation when a
testifying chemist assumes a defendant is in the elimination phase of alcohol consumption
at the time of the accident.

 State's Grounds:

 1. Whether the court of appeals erred by reversing Appellant's convictions for
double-jeopardy reasons without providing the parties an opportunity to brief the issue.

 2. Whether it is apparent from the face of the record, in this case, that Appellant's
convictions for both felony murder and either manslaughter or intoxication manslaughter
constitutes a violation of the multiple punishments branch of double-jeopardy protection.

 3. Whether a State's preference should be taken into account when deciding which
convictions to vacate due to a violation of due process.

DISCUSSION

Lack of a Culpable Mental State for a Felony Murder Conviction

 In his first ground for review, Appellant argues that the State failed to allege a
culpable mental state for felony murder, and the court of appeals erred in its decision that
the trial court did not err in refusing to quash the indictments. He contends that it goes
against the intent of the Legislature to say that a felony that expressly has no culpable
mental state may serve as the underlying felony in a felony murder conviction. This Court
has already addressed this issue in a recent case, Lomax v. State, 233 S.W.3d 302 (Tex.
Crim. App. 2007). In Lomax, we held that the felony murder statute plainly dispensed with
a culpable mental state, and that a felony DWI, which also does not require proof of a
culpable mental state, may serve as the underlying felony. Id. Appellant has not presented
a new argument that would warrant our reconsideration of this issue.

Definition of "in furtherance" as Applied to "clearly dangerous act"

 In his second ground for review, Appellant argues that the court of appeals failed to
consider the plain language of the felony murder statute when determining if there was
sufficient evidence to show that the act clearly dangerous to human life was actually in
furtherance of felony DWI. Appellant points out that the Texas Penal Code does not define
the phrase "in furtherance," and under Pettijohn v. State, 782 S.W.2d 866, 868 (Tex. Crim.
App. 1989), when a statutory term is not defined by the statute itself, it should be construed
according to the rules of grammar and common usage. Therefore, in the jury instructions,
the phrase "in furtherance" should be given the meaning "to promote" or "to advance."

 Appellant relies upon Robinson v. State, 783 S.W.2d 648, 651 (Tex. App. - Dallas
1990, pet. granted), to argue that it is acceptable to employ the use of a dictionary and apply
the ordinary meaning of the words when construing a phrase. Appellant looked to Black's
Law Dictionary, in which the definition of "furtherance" is "the act of furthering, helping
forward, promotion, advancement, or progress." Black's Law Dictionary 466 (Abridged 6th
Ed. 1991). Appellant states that if you apply this definition to the felony murder statute, it
means that the "clearly dangerous act" must advance or promote the commission of the
underlying felony, and that, in this case, the act of driving into oncoming traffic did nothing
to advance the commission of felony DWI and even halted its commission. Appellant
claims that the court of appeals is acting arbitrarily by applying the plain language of the
felony murder statute when it rejected his mens rea argument, but not applying the plain
meaning of "in furtherance." Appellant also suggests that the court of appeals erred in its
application of Johnson v. State because Johnson considered whether the underlying felony
merged with felony murder, which is distinguishable from Appellant's argument.

 When examining the legal sufficiency of the evidence, appellate courts view the
evidence in the light most favorable to the verdict. If a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt, then the evidence is
legally sufficient. Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005),
citing Jackson v. Virginia, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979);
Geesa v. State, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991). Appellant's indictment for
felony murder alleged that the "clearly dangerous act" was "driv[ing] a heavily loaded Jeep
towing a loaded trailer across the center stripe of a roadway into the oncoming lane of
travel." According to witness testimony, Appellant was seen driving into the oncoming lane
of travel several times before this action resulted in a collision. While we acknowledge
that Appellant did not raise the issue of merger that was considered in Johnson, we
disagree with his argument that driving into the other lane was not in furtherance of driving
while intoxicated. A fact-finder could rationally have found beyond a reasonable doubt that
Appellant committed an act clearly dangerous to human life in furtherance of felony DWI. 
The court of appeals did not err in determining that evidence was legally sufficient to
support Appellant's felony murder conviction.

Admission of Dr. Mott's Testimony and the Mata Factors

 In his third ground for review, Appellant contends that the court erred in holding that
it was not an abuse of discretion to admit the testimony of Dr. Charles Mott. At trial, Dr.
Mott testified that, when he performed his retrograde extrapolation, he assumed that the
blood samples were taken when Appellant was in the elimination phase of alcohol
consumption. He also testified that he based this assumption upon an entry in a hospital
record stating that Appellant had said he last "ate or drank" at 7 p.m. and the accident took
place at approximately 8:30 p.m. Appellant argues that the assumption that he was in the
elimination phase of alcohol consumption was flawed and that, because of this assumption,
Dr. Mott failed to consider any of the factors set out in Mata v. State, 46 S.W.3d 902, 916
(Tex. Crim. App. 2001). To support the argument that Dr. Mott's testimony was unreliable,
Appellant argues that the result of his first blood test is not reliable because Dr. Mott had
to convert the results of the hospital's serum-blood analysis, and because the blood sample
was not taken until an hour and a half after the accident. Dr. Mott tested a sample of blood
serum to determine the blood-alcohol concentration under a whole-blood analysis. In
performing the retrograde extrapolation, Dr. Mott converted the serum blood test result
into a whole-blood calculation in order to compare the two blood results. In order to do
this, Dr. Mott used an average conversion ratio. Appellant argues that this ratio is
unreliable without knowing the individual characteristics of Appellant.

 We review the judge's decision to admit this scientific evidence for an abuse of
discretion. Russeau v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005). Under an
abuse of discretion standard, an appellate court should not disturb the trial court's decision
if the ruling was within the zone of reasonable disagreement. Hinojosa v. State, 4 S.W.3d
240, 250-251 (Tex. Crim. App. 1999), citing Griffith v. State, 983 S.W.2d 282, 287 (Tex.
Crim. App. 1998).

 The proponent of scientific evidence must show the court, by clear and convincing
evidence, that the evidence is reliable. To show reliability, three criteria must be met: (1)
the underlying theory is valid; (2) the technique applying said theory is valid; and (3) the
technique was properly applied on the occasion in question. Kelly v. State, 824 S.W.2d
568, 573 (Tex. Crim. App. 1992). Appellant claims that the technique was not properly
applied by Dr. Mott because he incorrectly assumed that Appellant was in the elimination
phase of alcohol absorption. The State correctly asserts that the trial court does not abuse
its discretion by allowing an expert to base testimony upon an assumption if there is a
factual basis for the assumption in the record. Dr. Mott based his assumption upon medical
records stating that Appellant said he last ate or drank approximately 90 minutes prior to
the accident. Although Appellant tried to undermine the reliability of this timeline, the trial
judge did not abuse his discretion by allowing testimony based upon this assumption. The
trial judge was in the best position to judge the credibility of the witnesses, and his decision
to trust the medical record and allow the testimony was not unreasonable.

 As we explained in Mata, retrograde extrapolation is the estimation of someone's
blood-alcohol level at the time of driving by using a test result from a later time. 46
S.W.3d at 908. We also described the science behind retrograde extrapolation and
recognized that, though there is some disagreement in the scientific community, retrograde
extrapolation can be reliable when applied correctly. In Mata, we stated that "the expert's
ability to apply the science and explain it with clarity to the court is a paramount
consideration" and we also provided a list of factors a court should consider when
determining the reliability of a retrograde extrapolation. Id. at 916.

 Based on the assumption that Appellant was in the elimination phase, Dr. Mott
concluded that Appellant's blood-alcohol level was actually higher at the time of the
accident than it was at the time of the blood test. The assumption that Appellant was in the
elimination phase is bolstered by the fact that Appellant's blood-alcohol level was lower in
the second blood test than it was in the first blood test. However, Appellant asserts that the
results of the first blood test can not be relied on because Dr. Mott's conversion of the
results to whole-blood analysis was erroneous, and the first sample was taken too long after
the accident. Dr. Mott testified that serum sample results are approximately eighteen
percent higher than whole-blood results. It is a valid method to reduce serum-blood results
by 15-18% when converting to a whole-blood result, (6) but this percentage can be affected by
an individual characteristics. Appellant also conducted a voir dire about this exact issue. 
The trial judge also heard Appellant's cross-examination of Dr. Mott and his efforts to
undermine the expert's testimony. Dr. Mott did not use a conversion percentage that was
outside of the acceptable range, and he explained why he felt that the conversion was
accurate. As to the argument that the blood sample was taken too long after the accident to
be reliable, research indicates that a blood test can be reliable if taken within two hours of
driving. (7) Therefore, the results of the first blood test do, in fact, support the expert's
assumption.

 Dr. Mott testified that his assumption that Appellant was in the elimination phase
disposed of his need to know many of Appellant's personal characteristics. As we
recognized in Mata, "if the State had more than one test, each test a reasonable length of
time apart, and the first test were conducted within a reasonable time from the time of the
offense, then an expert could potentially create a reliable estimate of the defendant's BAC
with limited knowledge of personal characteristics and behaviors." 46 S.W.2d at 916.

 In some cases, cross-examination could reveal the unreliability of an assumption
similar to the one in this case or the unreliability of the retrograde extrapolation based
upon such an assumption. However, based on the factors outlined in Mata, considering that
Dr. Mott clearly explained retrograde extrapolation to the court, clearly explained how he
calculated Appellant's blood alcohol level based upon his assumption, clearly explained
how he converted the serum-blood result to a whole-blood result, consistently testified
without contradicting himself, testified as to his years of experience with retrograde
extrapolation, as well as the underlying theory of the science and its methodologies, it was
not an abuse of discretion to admit his scientific testimony.

Double-jeopardy

A. Unassigned Error

 The State argues that the court of appeals erred when it decided that Appellant's
convictions violated the double-jeopardy clause without allowing the parties to brief the
issue. The State bases its argument on State v. Pena, 191 S.W.3d 133, 136 (Tex. Crim.
App. 2006), which said, "[M]any, if not most, of the types of error that would prompt sua
sponte appellate attention need not be assigned because the error involved constitutes an
obvious violation of established rules. Novel constitutional issues are a different matter." 
The State concedes that convictions for intoxication manslaughter and manslaughter violate
the double-jeopardy clause, and this is an "obvious violation of established rules." 
However, the State claims that it is a novel issue to determine if there are double-jeopardy
violations when a defendant is convicted of felony murder and either intoxication
manslaughter or manslaughter and that the court of appeals should have allowed the parties
to brief this issue. The State also contends that the double-jeopardy issue has been waived
because there was no objection at trial and the face of the record has failed to show a
multiple punishments violation. See Gonzalez v. State, 8 S.W.3d 640 (Tex. Crim. App.
2000). The State further argues that manslaughter and intoxication manslaughter are not the
same offense as felony murder for double-jeopardy purposes under a Blockburger (8)
analysis. Citing United States v. Dixon, 509 U.S. 688 (1993), which eliminated the "same
conduct" test, the State rejects the idea that, just because Appellant engaged in only one
"culpable act," he cannot be convicted of more than one offense. The State does not argue
that there was no double-jeopardy violation, but rather that the double-jeopardy violation
was not obvious from the face of the record as is required when an unassigned issue is
addressed sua sponte-and without briefing-or when there is no objection made at trial.

 Appellate courts have the jurisdiction and authority to review unassigned error. See
Sanchez v. State, 209 S.W.3d 117, 120 (Tex. Crim. App. 2006); Wright v. State, 981
S.W.2d 197, 199 n. 2 (Tex. Crim. App. 1998). In the case of a double-jeopardy violation,
the issue may be addressed as an unassigned error when the violation is apparent from the
face of the record. Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). In
Ervin v. State, we stated that imposing convictions for both manslaughter and intoxication
manslaughter violated the double-jeopardy clause. 991 S.W.2d 804 (Tex. Crim. App.
1999). This violation is clear from the face of the record and the court of appeals did not
need to request briefing from the parties in order to decide this issue. The State contends,
though, that the court of appeals should have requested briefing before deciding that the
convictions for felony murder and manslaughter, and felony murder and intoxication
manslaughter violated double-jeopardy principles. While we have never determined that
double-jeopardy is always violated when one is convicted of these specific offenses,
double-jeopardy arguments are especially common in the context of multiple homicide
convictions. See id. (discussing the nationwide multitude of opinions addressing double-jeopardy issues with more than one homicide conviction per victim.) Therefore, the court
of appeals did not err in considering this unassigned issue without further briefing from the
parties.

B. Felony murder, Intoxication Manslaughter, and Manslaughter 

 The Fifth Amendment offers three different constitutional protections. First,
protection against a second prosecution for the same offense after acquittal. Second,
protection against a second prosecution for the same offense after conviction. Third,
protection against multiple punishments for the same offense. North Carolina v. Pearce,
395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), overruled on other grounds
by Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989); Ex parte
Cavazos, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). 

 This case involves the third category of protection provided by the Fifth 
Amendment. In Langs v. State, 183 S.W.3d 680 (Tex. Crim. App. 2006), we laid out the
two contexts in which a multiple punishments claim can arise:

 1. The lesser-included offense context, in which the same conduct is
punished twice; once for the basic conduct, and a second time for that same
conduct plus more (for example, attempted assault of Y and assault of Y;
assault of X and aggravated assault of X); and

 2. Punishing the same criminal act twice under two distinct statutes when the
legislature intended the conduct to be punished only once (for example,
causing a single death by committing both intoxication manslaughter and
manslaughter).

Id. at 685. 

 Our first task is to determine if intoxication manslaughter and felony murder
constitute the "same offense." When multiple punishments arise out of one trial, the
Blockburger test is the starting point in analyzing the two offenses. Under the
Blockburger test, two offenses are not the same if one requires proof of an element that
the other does not. It is obvious from the outset that, when comparing the two Texas Penal
Code statutes, the offenses are not the same. But in Texas, when resolving whether two
crimes are the same for double-jeopardy purposes, we focus on the elements alleged in the
charging instrument. See Parrish v. State, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999,
reh'g denied.) Under the cognate-pleadings approach adopted by this Court, double-jeopardy challenges should be made even to offenses that have differing elements under
Blockburger, if the same "facts required" are alleged in the indictment. See Hall v. State,
225 S.W.3d 524 (Tex. Crim. App. 2007).

 In the first count of both indictments, the State charged Appellant with felony
murder. The indictments alleged the following elements: (1) Appellant committed a felony
other than manslaughter, (2) in the course of and in furtherance of committing the felony,
he committed an act clearly dangerous to human life, (3) that caused the death of another. 
The indictment specified that the underlying felony was driving while intoxicated with a
child passenger, and the act clearly dangerous to human life was driving a heavily loaded
Jeep over the center line and into oncoming traffic, both of which had to be established by
the State. To prove the felony DWI, the State had to show that Appellant was intoxicated
while operating a motor vehicle in a public place and that there was a passenger younger
than 15 years of age in the car at the time.

 The second count of the indictment was intoxication-manslaughter and it contained
the following elements: (1) Appellant was intoxicated, (2) while operating a vehicle in a
public place, and (3) because of this intoxication caused the death of another. It is clear
that when comparing the two charges as indicted, and taking into account all of the elements
that the State must prove for these two charges, the two offenses are substantially similar. 
The only fact not common between the two is that the State would have to prove the
defendant's intoxication, not just the operation of a vehicle, caused the fatal result in the
intoxication manslaughter charge. The two offenses are not the same under a strict
application of the Blockburger test, but the Blockburger test is a rule of statutory
construction and is not the exclusive test for determining if two offenses are the same.

 In Ervin v. State, we laid out a non-exclusive list of factors to consider when
examining if two offenses are the same in the context of multiple punishment. These
factors included: whether offenses are in the same statutory section; whether the offenses
are phrased in the alternative; whether the offenses are named similarly; whether the
offenses have common punishment ranges; whether the offenses have a common focus;
whether the common focus tends to indicate a single instance of conduct; whether the
elements that differ between the two offenses can be considered the same under an imputed
theory of liability that would result in the offenses being considered the same under
Blockburger; and whether there is legislative history containing an articulation of an intent
to treat the offenses as the same or different for double-jeopardy purposes. 991 S.W.2d at
814. These factors are not exclusive, and the question ultimately is whether the legislature
intended to allow the same conduct to be punished under both of the offenses. Ervin v.
State, 991 S.W.2d 804 (Tex. Crim. App. 1999), relying on Ball v. United States, 470 U.S.
856, 84 L. Ed. 2d 740, 105 S. Ct. 1668 (1985); Missouri v. Hunter, 459 U.S. 359, 74 L.
Ed. 2d 535, 103 S. Ct. 673 (1983). 

 Felony murder and intoxication manslaughter are no longer in the same statutory
section, but they were until 1994. Prior to 1994, intoxication manslaughter was called
involuntary manslaughter by driving while intoxicated. (9) The offense was contained in the
same section as all of the homicide offenses and was considered an alternative way to 
commit manslaughter. In 1994, involuntary manslaughter by driving while intoxicated was
moved to the chapter that addresses intoxication offenses. The committee testimony and
the house and senate journals addressing the senate bill that made this change do not
mention the reasoning for moving the statute, but we have suggested that it was largely for
housekeeping purposes. Ervin, 991 S.W.2d. at 816. Despite the fact that intoxication
manslaughter was moved to the chapter regarding intoxication offenses, it is still an offense
that addresses homicide. As we held in Ervin, we cannot say that, by moving the statute, the
legislature intended to create a completely separate offense for double-jeopardy purposes. 
Id. Because the two offenses are distinct and in separate statutory sections, they cannot be
phrased in the alternative, therefore this factor is not applicable in this case.

 Although intoxication manslaughter was moved to a different section of the Penal
Code, it kept the title of manslaughter, indicating that it is still considered a homicide. 
Felony murder and intoxication manslaughter are clearly similarly named. Murder and
manslaughter denote similar offenses that differ only in degree. As such, this factor weighs
in favor of the two offenses being considered the "same" in these circumstances. 

 The focus of the two offenses is the same: the death of an individual. Both offenses
are result oriented and punish one for causing the death of another, even if engaging in the
behavior that ultimately ended in death but was not intended to cause the death. As we said
in Ervin, the sameness of the result is an indication that the Legislature did not intend to
impose multiple punishments. Id. In conjunction with this factor is the "allowable unit of
prosecution," which is defined by the legislature and determines if one course of conduct
results in more than one offense. Ex parte Cavazos, 203 S.W.3d 333. Usually, analysis of
an allowable unit of prosecution involves a situation in which two offenses from the same
statutory section are charged, but the spirit behind the principle is fitting here. In Texas, the
allowable unit of prosecution for an assaultive offense is one unit per victim, which is
evidence that the legislature did not intend for one to be prosecuted for several homicides
when there is only one victim. See id. (holding that there can be only one burglary
conviction for each unlawful entry, not one conviction per complainant.) In this case, there
were two victims, so each victim would constitute a separate offense.

 The most important factor is if there is an indication in the legislative history that
the offenses should be treated the same for double-jeopardy purposes. To be clear, felony
murder and intoxication manslaughter are certainly not the same offense in all situations. 
What distinguishes this case is the way in which the State chose to indict Appellant and the
underlying felony in the felony murder charge. There is no legislative indication that
felony murder was meant to be treated the same as an intoxication-manslaughter offense,
but when the underlying felony is a felony DWI with a child passenger, it is hard to fathom
that the legislature intended for one drunk-driving accident to result in multiple homicide
convictions for each victim.

 In Ervin, we determined that manslaughter and intoxication manslaughter are the
same offense. Similarly, under the facts of this case, felony murder is the same as
intoxication manslaughter, and intoxication manslaughter is the same as manslaughter. 
Because the multiple convictions for the same conduct violate double-jeopardy, only one
of these convictions can be upheld.

Remedy for Double Jeopardy Violation

 The State's final ground for review hinges upon our determination regarding the
court of appeals' decision to consider the double-jeopardy issue as unassigned error. The
State argues that courts should take into account the prosecution's preference when
deciding which convictions to vacate when a multiple punishment violation occurs. The
State agrees that the court of appeals was correct in applying the "most serious offense"
test, and agrees that felony murder is the most serious offense. However, the State
believes that, while cases such as Landers and Ex parte Cavazos, 203 S.W.3d 333 (Tex.
Crim. App. 2006), attempted to lay out the factors to consider when deciding which
conviction to vacate, they failed to include an important factor: the discretion of the
prosecutor. The State asserts that prosecutors should be given a say as to which
convictions to vacate since they have discretion over which charges to bring against the
defendant. In this case, the State argues that a reasonable prosecutor might not have chosen
to prosecute Appellant for the most serious offense if he had known that the two other
charges would be dismissed. The State maintains that a reasonable prosecutor might have
looked to the future consequences Appellant would face if he were to be convicted of
another DWI offense. If the felony murder convictions are retained, then Appellant could
be charged with a misdemeanor DWI enhanced by a prior felony conviction. The
punishment range for this is a fine no greater than $4000, and a jail sentence from 90 days
to one year. Tex. Pen. Code Ann. §12.43(a). But if the intoxication-manslaughter
convictions are retained, Appellant could be charged with felony DWI, a third-degree
felony.

 When a defendant is subjected to multiple punishments for the same conduct, the
remedy is to affirm the conviction for the most serious offense and vacate the other
convictions. Ex parte Cavazos, 203 S.W.3d 333; Landers v. State, 957 S.W.2d 558. We
apply the "most serious offense" test to double-jeopardy violations because of the policy
reasons stated in Landers including that this test would eliminate arbitrary decisions based
upon the order of offenses in the charging instrument, that in most circumstances the State
would elect to retain the most serious conviction, and that public safety is insured through
the deterrent influence of penalties. Id. at 560, citing Ex parte Pena, 820 S.W.2d 806
(Tex. Crim. App. 1991). 

 We determined in Ex parte Cavazos that the most serious offense was the offense
in which the greatest sentence was assessed. 203 S.W.3d at 338 (overruling Landers to the
extent that it held that factors such as degree of felony, range of punishment, and parole
eligibility rules should be considered when determining the most serious offense.) In the
present situation, the trial judge assessed 18 years' confinement, to be served concurrently,
for all six convictions. Therefore, we cannot look to only the sentence imposed to
determine which of these offenses is the most serious. The State urges that a contingent
order be issued to allow the prosecutor to determine which conviction to retain. Although
we recognize that not every prosecutor would elect to keep the most serious offense in
every case, the "most serious offense" test attempts to take into account which conviction
prosecutors would choose to retain, while also continuing to meet the other policy
considerations.

 Only because the sentences are identical do we have to look to another criteria for
determining which offense is the most serious. In this case, we look to the degree of
felony for each offense. While the sentences assessed for each of the convictions on this
case is the same, felony murder is a first-degree felony, while intoxication manslaughter
and manslaughter are second-degree felonies. As such, felony murder is clearly the most
serious offense and we affirm the court of appeals' decision to retain this conviction.

CONCLUSION

 Although the court of appeals did not have the benefit of our decision in Lomax v.
State, 233 S.W.3d 302, the court correctly determined that felony DWI can serve as the
underlying felony of a felony murder prosecution. We agree with the court of appeals that
the evidence was legally sufficient to show that Appellant's clearly dangerous act was in
furtherance of the underlying felony and that the trial court did not abuse its discretion in
admitting the expert testimony of Dr. Mott. Finally, the court of appeals did not err in
considering the unassigned error, and correctly determined that the felony murder
convictions be retained. We affirm the decisions of the court of appeals.


 Meyers, J.

Delivered: January 16, 2008


Publish
1. There were two victims, therefore, the State returned one indictment per victim.
2. Tex. Pen. Code Ann. §19.02(b)(3) and Tex. Pen. Code Ann. §49.045; Tex. Pen. Code
Ann. §49.08; Tex. Pen. Code Ann. §19.04, respectively.
3. A witness testified that he had observed Appellant driving ten to fifteen miles below the speed
limit and drifting from the road to the shoulder and across the middle line of traffic prior to the accident.
4. A police officer must require a breath or blood sample if, at the time of the arrest, he
reasonably believes that the individual was intoxicated while operating a motor vehicle at the time of the
accident and that someone has died as a result of the accident. Tex. Transp. Code Ann.
§724.012(b)(3)(A). In this case, Appellant voluntarily provided the blood sample prior to his arrest.
5. The court of appeals did not have the benefit of our decision in Ex parte Cavazos, 203
S.W.3d 333 (Tex. Crim. App. 2006), at the time of their opinion, so they correctly applied the test set
forth in Landers.
6. Winek, C.L. and Carfagna, M. Comparison of Plasma, Serum and Whole Blood Ethanol
Concentrations. J. Analytical Toxicology 11, 267-268, 1987.
7. Gullberg and McElroy, Comparing Roadside with Subsequent Breath Alcohol Analysis
and Their Relevance to the Issue of Retrograde Extrapolation, 47 Forensic Sci. Int'l 193 (1992).
8. Blockburger v. United States, 284 U.S. 299 (1932)
9. Former Tex. Pen. Code Ann. §19.05(a)(2) (Vernon 1993).