02-09-151-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00151-CR

 

 


 
 
 Christopher Blake Alami
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE 372nd District Court OF Tarrant COUNTY

------------

OPINION

------------

I.  Introduction

          Appellant Christopher Blake Alami
appeals his conviction for felony murder. 
In five points, Alami argues that the evidence is legally and factually
insufficient to support his conviction and that the trial court abused its
discretion by overruling his rule 403 objections and his motion for a
mistrial.  We will affirm.

II.  Factual and Procedural Background

          On June
13, 2008, at around 7:45 p.m., Alami’s mother dropped Alami off at a Buffalo
Wild Wings (the “restaurant”) located in South Fort Worth.  Alami met Madhuri Kumar at the restaurant,
where they both consumed alcohol before leaving at around 10:55 p.m. in Kumar’s
Lexus.  Alami was driving Kumar’s Lexus
northbound on Interstate 35 West with Kumar in the passenger seat when the left
front corner of the Lexus struck the right rear corner of a Hyundai being
driven by Sharmon Teel in the center lane of the roadway.  Teel maintained control of her Hyundai, but
the Lexus passed by the right side of Teel’s vehicle, overcorrected to the
right side of the roadway, crossed onto the right shoulder, overcorrected to
the left in an attempt to move back onto the roadway, started skidding and
rotating counterclockwise across the roadway, and collided into a barrier on
the left side of the roadway.  The
passenger side of the Lexus made contact with the barrier, crushing the center
post of the vehicle into Kumar and pushing Kumar towards the center of the
vehicle.  Kumar sustained severe internal
injuries and died as a result of the collision. 
Alami suffered a jaw fracture and a fracture in the back of his head.

          Kayden Bathory, an emergency medical
technician, arrived at the scene and helped Alami exit the wrecked Lexus.  Bathory smelled alcohol coming from Alami’s
breath and asked him how much he had had to drink.  Alami responded, “Too much.”

Officer
Vincent Brown also arrived on the scene and spoke to Alami, who was leaning
against the center concrete dividing wall. 
Officer Brown noticed that Alami had red, bloodshot eyes; slow, slurred
speech; and a moderate smell of alcohol on his breath.  Alami’s condition gave Officer Brown the
indication that Alami “had possibly been drinking and maybe had been
intoxicated.”

Bathory
helped transfer Alami to a different ambulance, where Nick Lowery, a paramedic,
examined Alami.  Lowery smelled an
alcohol-like odor coming from Alami and questioned him about how much he had
had to drink.  Alami responded, “Too
much.”

Alami was
transported to John Peter Smith Hospital. 
There, he refused Officer Jonathan McKee’s request to provide a blood
sample, so Officer McKee initiated procedures for a mandatory blood draw, which
Nurse Denise Nemia performed.  Test
results showed that Alami had a blood-alcohol content of 0.19 grams of alcohol
per 100 millimeters of blood.

          The State indicted Alami for felony
murder, alleging felony DWI as the underlying felony offense.  Specifically, the indictment alleged in
relevant part that on June 13, 2008, Alami did

then and there
commit a felony, to-wit:  driving while
intoxicated, after having been previously convicted two times of the offense of
driving while intoxicated and in the course of and in furtherance of the
commission of said felony, he committed or attempted to commit an act clearly
dangerous to human life, to-wit:  by
causing the motor vehicle he was driving and operating to collide with and
strike another motor vehicle which resulted in the defendant’s losing control
of the motor vehicle he was driving and operating which did cause it to collide
with a concrete barrier and guardrail which caused the death of Madhuri Kumar
who was an occupant in the motor vehicle being driven and operated by the
defendant.

 

A jury
convicted Alami of felony murder and assessed his punishment at forty years’
confinement.  The trial court sentenced
him accordingly.  This appeal followed.

III.  Evidentiary Sufficiency

          In his first and second points, Alami
argues that the evidence is legally and factually insufficient to support his
conviction.  He contends that several
witnesses—who were also present at the restaurant on June 13, 2008—testified
that he appeared to be sober prior to when he and Kumar left the restaurant and
that he did not commit an act clearly dangerous to human life that caused
Kumar’s death because he “tried to avoid Ms. Teel’s slower moving vehicle and
by doing so overcorrected the Lexus, which caused it to slide into the safety
barrier.”

          The court of criminal appeals recently
held that there is “no meaningful distinction between the Jackson v. Virginia legal-sufficiency standard and the Clewis factual-sufficiency standard” and
that “the Jackson v. Virginia
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.  All other cases to the contrary,
including Clewis, are
overruled.”  See Brooks
v. State, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010).  Accordingly, we will apply the same standard
of review to all of Appellant’s sufficiency complaints.

          A.      Standard of Review

          In our due
process review of the sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007). 
This standard gives full play to the responsibility of the trier of fact
to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code
Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).  Thus, when performing a sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  Instead, we “determine whether the necessary
inferences are reasonable based upon the combined and cumulative force of all
the evidence when viewed in the light most favorable to the verdict.”  Hooper v. State, 214
S.W.3d 9, 16–17 (Tex. Crim. App. 2007). 
We must presume that the factfinder resolved any conflicting inferences
in favor of the prosecution and defer to that resolution.  Jackson, 443 U.S. at
326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

B.      DWI
and Felony Murder

A person
commits the offense of DWI “if the person is intoxicated while operating a
motor vehicle in a public place.”  Tex. Penal Code Ann. § 49.04(a) (Vernon 2003).  “Intoxicated” is defined in part as having an
alcohol concentration of 0.08 or more.  Id. § 49.01(2)(B)
(Vernon 2003).  Under chapter 49 of the
penal code, proof of a culpable mental state is not required for a DWI
conviction.  Brown v. State, 290 S.W.3d 247, 249 (Tex. App.—Fort Worth 2009,
pet. ref’d) (citing penal code section 49.11, which provides in part that
“proof of a culpable mental state is not required for conviction of an offense
under this chapter”).

          An offense under section 49.04 is a
third-degree felony if the defendant has previously been convicted two times of
any offense relating to the operating of a motor vehicle while
intoxicated.  Tex. Penal Code Ann. § 49.09(b)(2) (Vernon Supp. 2010). 
“The Legislature has plainly dispensed with proof of a culpable mental
state for felony DWI.”  Lomax v. State, 233 S.W.3d 302, 304 n.6
(Tex. Crim. App. 2007) (citing penal code section 49.11).

A person
commits felony murder if he “commits or attempts to commit a felony, other than
manslaughter, and in the course of and in furtherance of the commission or
attempt, or in the immediate flight from the commission or attempt, he commits
or attempts to commit an act clearly dangerous to human life that causes the
death of an individual.”  Tex. Penal Code
Ann. § 19.02(b)(3) (Vernon 2003).  A felony DWI offense may serve as the
underlying felony in a felony-murder prosecution:

[D]eciding that
Section 19.02(b)(3) dispenses with a culpable mental state is consistent with
the historical purpose of the felony-murder rule, the very essence of which is
to make a person guilty of an “unintentional” murder when he causes another
person’s death during the commission of some type of a felony.  We hold that Section 19.02(b)(3) plainly dispenses with a culpable mental state.

 

Lomax, 233 S.W.3d at 305 (citations
omitted), 309 (“The plain language of Section 19.02(b)(3) also does not exclude
felony DWI as an underlying felony for a felony-murder prosecution, and we must
understand the Legislature to have meant what the plain language of Section
19.02(b)(3) expresses.”); see Paniagua v.
State, No. 13-08-00228-CR, 2010
WL 672886, at *2–4 (Tex. App.—Corpus Christi Feb. 25, 2010, no pet.) (mem. op.,
not designated for publication); Talamantes
v. State, No. 03-07-00668-CR, 2009 WL 416521, at *1 (Tex. App.—Austin Feb.
19, 2009, pet. ref’d) (mem. op., not designated for publication).

          C.      Sufficient Evidence

          The record demonstrates that Alami met
Kumar at the restaurant and that several individuals, including Chalon Ybarra,
Ann Johnston, Karen Hendricks, and Stacy Fischer, observed Alami consume
alcohol while there before leaving with Kumar. 
Fischer testified that she thought Alami had consumed two beers and two
shots of cinnamon Schnapps in a ninety-minute period.

          After leaving the restaurant, the left
front corner of the Lexus that Alami was driving northbound on Interstate 35
West struck the right rear corner of a Hyundai that was being driven by Teel in
the center lane of the roadway.  Teel,
who was traveling at the speed limit of sixty miles per hour, felt a “jolt”
when her vehicle was struck, and she and Matt Harris, who was driving a vehicle
behind Teel, observed the Lexus cross onto the right shoulder, move back to the
left and onto the roadway, start skidding across the roadway, and collide into
a barrier on the left side of the roadway. 
The collision with the barrier crushed the center post of the vehicle
into Kumar, who died from severe internal injuries.  Dr. Nizam Peerwani performed Kumar’s autopsy
and identified the cause of Kumar’s death as blunt force trauma.

          According to both Bathory and Lowery,
after the incident, Alami said that he had consumed “[t]oo much” to drink.  Officer Brown observed that Alami had red,
bloodshot eyes; slow, slurred speech; and a moderate smell of alcohol on his
breath.  Mandatory blood test results
showed that Alami had a blood-alcohol content of .19 grams of alcohol per 100
millimeters of blood, which was over twice the legal limit.  Officer Brown opined that Alami’s intoxicated
driving had caused the accident.  See Kuciemba v. State, 310 S.W.3d 460,
462 (Tex. Crim. App. 2010) (“Being intoxicated at the scene of a traffic
accident in which the actor was a driver is some circumstantial evidence that
the actor’s intoxication caused the accident . . . .”).

          Deputy Laura Watts testified as an
expert on fingerprint identification and concluded that the right thumbprint on
a set of fingerprints that she had obtained from Alami before trial matched the
right thumbprints found on two of Alami’s prior judgments of conviction for
DWI.

          Alami challenges the sufficiency of
the evidence to show that he was intoxicated, arguing that several witnesses
testified that he “appeared to be sober” prior to leaving the restaurant with
Kumar.[1]  But Max Courtney, an expert who testified on
behalf of the State, opined that a person’s appearance is not a reliable factor
in determining whether that person is intoxicated and that a person who
consumes a large amount of alcohol could appear not to be intoxicated to a
casual observer.  He testified on direct
examination,

Q. The next thing I want to ask you
about is the subjective evaluation of intoxication.  How reliable is it to use, as your
determining factor, how a person looks to determine if they’re intoxicated?

 

A.  Not
accurate.

Q. Not accurate.  Have there actually been some studies that
have looked at that?

 

A.  There
have been.

Q. And
you’re familiar with the Widmark study?

A.  Yes.

Q. And
what did the Widmark study involve?

A.  It involved - - this
was, I believe, in Sweden where they had to - - in a DWI case they
had to take the person before a trained physician and that physician would then
evaluate the person and see if they could come to the conclusion that they were
intoxicated.  Basically the bottom line
of that study was that a person with an alcohol concentration
of .15, the physicians were only able to correctly diagnose the person
as intoxicated in half of the cases.

 

Q. So in 50 percent of the time
physicians misdiagnosed someone at a .15, almost two times the per se
level as being intoxicated?

 

A.  Correct.

              . . . .

Q. And can you explain why is it
that a person who’s consumed a large amount of alcohol, how can they, to a
casual observer, appear to be normal?

 

A.  By
what we call masking.

Q. And
what is that?

A.  Masking is an
ability to - - it’s a learned behavior wherein you’re able to
hide your symptoms of intoxication from the observer.

 

Q. Okay.  And the more common it is for a person to
consume alcohol is their ability to mask, likewise, probably greater?

 

A.  Yes,
sir.

Moreover,
the mandatory blood test results showed that Alami had a blood-alcohol content
of .19 grams of alcohol per 100 millimeters of blood, which was over twice the
legal limit.

          Alami argues that he did not commit an
act clearly dangerous to human life because he tried to avoid Teel’s
vehicle.  But Timothy Lovett, an accident
reconstructionist who performed a post-collision inspection of the Lexus and
gave opinions regarding the incident, opined that the Lexus was in good working
order before the incident, that the driver of the Lexus was at fault in causing
the accident, that this is the type of automobile crash that he would expect to
see when an intoxicated driver is involved, and that a sober person could have
avoided the collision.  Significantly, using
the “yaw marks” left behind by the skidding Lexus, Lovett calculated the speed
of the vehicle as it crossed from the right shoulder back onto the roadway and
began to skid and rotate counterclockwise (which was after it had contacted
Teel’s vehicle) at between eighty and eighty-seven miles per hour.  In light of this and the above evidence, a
rational jury could have determined beyond a reasonable doubt that Alami
committed an act clearly dangerous to human life when he drove the Lexus at an
excessive rate of speed and caused the speeding Lexus to contact Teel’s
vehicle, resulting in Alami’s losing control of the Lexus and causing it to
collide into the barrier.

          To the extent that Alami argues that
the evidence is insufficient to show that he committed an act clearly dangerous
to human life because there is contrary evidence that he merely overcorrected
the Lexus, the jury was free to resolve this conflict in the evidence, if any,
in favor of the State, which it did.  See Cain v. State, 958
S.W.2d 404, 409–10 (Tex. Crim. App. 1997).

          The concurrence disagrees that a
felony DWI offense may serve as the underlying felony in a felony-murder
prosecution and urges that statutory changes be made by the legislature.  The majority follows the law as interpreted by
the court of criminal appeals in Lomax
and leaves the decision to amend the law to the legislature.

          Viewing the evidence in the light most
favorable to the prosecution, a rational trier of fact could have found beyond
a reasonable doubt that Alami committed felony DWI and, in the course of and in
furtherance of the commission of felony DWI, committed an act clearly dangerous
to human life when he caused the speeding Lexus to contact Teel’s vehicle,
which resulted in Alami’s losing control of his vehicle and caused the vehicle
to ultimately collide with a concrete barrier, causing Kumar’s death.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d
at 778; see also Tex. Penal Code Ann.
§ 19.02(b)(3). 
Accordingly, we hold that the evidence is sufficient to support Alami’s
conviction for felony murder.  We
overrule Alami’s first and second points.

IV.  Rule 403 Objections

          In his third point, Alami argues that
the trial court abused its discretion by overruling his rule 403 objection to
the admission of State’s Exhibit 11, a post-collision photograph showing part
of the interior of Kumar’s Lexus, including a deceased Kumar lying in the
passenger seat.[2]  In his fourth point, Alami argues that the
trial court abused its discretion by admitting evidence of his prior
convictions (State’s Exhibits 39 and 40) over his rule 403 objection.[3]

          Although relevant, evidence may be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative
evidence.  Tex. R.
Evid. 403.  Once appellant makes a
rule 403 objection, the trial court must weigh the probative value of the
evidence to determine if it is substantially outweighed by its potential for
unfair prejudice.  Santellan v. State, 939 S.W.2d 155, 169
(Tex. Crim. App. 1997).  A rule
403 balancing test includes the following factors:  (1) the
inherent probative force of the proffered item of evidence along with (2) the
proponent’s need for that evidence against (3) any tendency of the
evidence to suggest decision on an improper basis, (4) any tendency of the
evidence to confuse or distract the jury from the main issues, (5) any
tendency of the evidence to be given undue weight by a jury that has not been
equipped to evaluate the probative force of the evidence, and (6) the
likelihood that presentation of the evidence will consume an inordinate amount
of time or merely repeat evidence already admitted.  Gigliobianco v. State, 210 S.W.3d 637, 641–42 (Tex. Crim. App.
2006).  The rules of evidence
favor the admission of relevant evidence and carry a presumption that relevant
evidence is more probative than prejudicial. 
Jones v. State, 944 S.W.2d
642, 652 (Tex. Crim. App. 1996), cert.
denied, 522 U.S. 832 (1997).

          Rule 403 requires that a photograph
have some probative value and that its probative value not be substantially
outweighed by its inflammatory nature.  Tex. R. Evid. 403; Williams
v. State, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009), cert. denied, 130 S. Ct. 3411 (2010).  A court may consider many factors in
determining whether the probative value of photographs is substantially
outweighed by the danger of unfair prejudice, including (1) the number of
exhibits offered, (2) their gruesomeness, (3) their detail, (4) their
size, (5) whether they are in color or are in black and white, (6) whether
they are close up, (7) whether the body depicted is clothed or naked, (8) the
availability of other means of proof, and (9) other circumstances to the
individual case.  Williams, 301 S.W.3d at 690 (citing Long v. State, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991), cert. denied, 505 U.S. 1224 (1992)).  Photographs are neither cumulative nor
lacking in significant probative value simply because they merely corroborate
other kinds of evidence.  Chamberlain v. State, 998 S.W.2d 230,
237 (Tex. Crim. App. 1999), cert. denied,
528 U.S. 1082 (2000).

          We will not disturb a trial court’s
evidentiary ruling absent an abuse of discretion.  Winegarner v. State, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).  As long as the trial court’s ruling is within
the zone of reasonable disagreement and is correct under any theory of law
applicable to the case, it must be upheld. 
Id.; see Williams, 301 S.W.3d at 690 (stating that the admissibility of
photographs over an objection is within the sound discretion of the trial
judge).

          A.      State’s Exhibit 11

          With
regard to State’s Exhibit 11, Alami argues that the trial court did not conduct
a balancing test as required by rule 403. 
The following exchange in the record demonstrates otherwise:

[Prosecutor]:     Your Honor, at this time I would like to publish certain
exhibits, with this witness, on the screen. 
I’d request permission to use State’s Exhibit No. 11 for all purposes
but not to publish 11 on the screen.  I
have a smaller one that I’ve shown Defense Attorney and I’ll show you as well,
Judge.

 

THE COURT:   Is 11 being offered at this time?

[Prosecutor]:     Yes, it is.

THE COURT:   All right.  Do you have any additional objections to 11
other than 403?

 

[Defense counsel]:   May I have a running objection to State’s 11?

THE COURT:   But other than the 403
objection, you have no additional objections?

 

[Defense counsel]:   No, Your Honor.

THE COURT:   At this time it’s balanced and overruled.  State’s 11 is
admitted for all purposes.  And you may
have a running objection to any use, display or testimony concerning 11.  [Emphasis added.]

 

          Alami further argues that State’s
Exhibit 11 did nothing more “than to inflame the jury in sympathy for the
State.”  We disagree.  The exhibit is a black and white photograph
that depicts the front portion of the interior of Kumar’s Lexus.  Kumar is lying dead in the passenger seat,
but she is clothed, and there are no gruesome, external injuries visible.  The photograph corroborated (1) Martye
Ferguson’s[4]
testimony regarding the extensive damage to the passenger side of the vehicle,
(2) Lovett’s testimony that Kumar died as a result of the collision with
the barrier, and (3) Dr. Peerwani’s testimony that Kumar did not suffer
any major external trauma.  To the extent
the photograph could be described as disturbing because it depicts a lifeless
Kumar, the photograph portrays no more than the disturbing consequences of
Alami’s felony-murder offense.  Weighing
the rule 403 factors, the trial court could have reasonably concluded that the
probative value of the photograph was not substantially outweighed by its
inflammatory nature, if any.  See Garcia v. State, 201 S.W.3d 695, 704
(Tex. Crim. App. 2006), cert. denied,
549 U.S. 1224 (2007) (“[W]hen determining whether evidence is admissible under Rule
403, we do not consider just whether the evidence is more prejudicial than
probative, we consider whether the probative value is substantially outweighed by the danger of unfair prejudice.”). 
Accordingly, we hold that the trial court did not abuse its discretion
by overruling Alami’s rule 403 objection to State’s Exhibit 11 and by admitting
the photograph.  We overrule Alami’s
third point.

          B.      State’s Exhibits 39 and 40

          With regard to State’s Exhibits 39 and
40, Alami argues that the trial court did not conduct a rule 403 balancing
test.  The trial court expressly
conducted the balancing test as follows:

[Prosecutor]:     Your Honor, at this time I would offer for all purposes
State’s Exhibit No. 39 and State’s Exhibit No. 40.

 

THE COURT:   Currently, there’s a
relevance objection pending before the Court. 
You re-urge that objection?

 

[Defense counsel]:   I re-urge that objection, yes, Your Honor.

THE COURT:   That objection is overruled.  You also have a 403 objection.  Do you re-urge that objection?

 

[Defense counsel]:   Yes, as to both instruments,
State’s 39 and 40.

THE COURT:   Your objection is balanced against the entire record.  It’s also overruled individually and
specifically, 401 and 403, as to each objection.  39 and 40.  And they’re both admitted.  [Emphasis added.]

 

          Alami also argues that the evidence of
his prior convictions “did no more than to inflame the jury in sympathy for the
State.”  We disagree.  A person may be charged with felony DWI if he
has two previous convictions for DWI. 
Tex. Penal Code Ann. § 49.09(b)(2).  The two prior DWI offenses are necessary
elements of the offense of felony DWI; they are jurisdictional, as opposed to
mere enhancement allegations.  See Martin v. State, 200 S.W.3d 635, 640
(Tex. Crim. App. 2006); State v. Wheeler,
790 S.W.2d 415, 416 (Tex. App.—Amarillo 1990, no pet.).  Therefore, to obtain a conviction for felony
DWI, the State must prove the two prior DWI convictions at the guilt-innocence
stage of trial.  See Barfield v. State, 63 S.W.3d 446, 448 (Tex. Crim. App. 2001); Mapes v. State, 187 S.W.3d 655, 658
(Tex. App.—Houston [14th Dist.] 2006, pet. ref’d).

          Here, State’s Exhibit 39 is a judgment
of final conviction dated April 21, 2006, in which a Collin County court found
Alami guilty of DWI.  State’s Exhibit 40
is a judgment of conviction dated October 9, 2007, in which a Denton County
court found Alami guilty of a second DWI. 
Alami did not stipulate to the prior DWI convictions.  Therefore, to convict Alami of felony DWI,
the State had to prove at the guilt-innocence phase that Alami had two prior
convictions for DWI—two essential elements of the felony DWI offense.  The probative value of State’s Exhibits 39
and 40 was, consequently, very high. 
Alami directs us to no evidence in the record that the State used this
evidence for a purpose other than to prove the jurisdictional elements of felony
DWI.[5]

          Weighing the rule 403 factors, the
trial court could have reasonably concluded that the probative value of State’s
Exhibits 39 and 40 was not substantially outweighed by the danger of unfair
prejudice.  See Garcia, 201 S.W.3d at 704.  Accordingly, we overrule Alami’s fourth
point.

V.  Mistrial

          In his fifth point, Alami argues that the trial court
abused its discretion by overruling his motion for a mistrial because the
State’s closing argument attempted to shift the burden of proof.

          We review a trial court’s refusal to
grant a mistrial for an abuse of discretion. 
Wood v. State,
18 S.W.3d 642, 648 (Tex. Crim. App. 2000).  To be permissible, the State’s jury argument
must fall within one of the following four general areas:  (1) summation
of the evidence; (2) reasonable deduction from the evidence; (3) answer
to argument of opposing counsel; or (4) plea for law enforcement.  Brown
v. State, 270 S.W.3d 564, 570
(Tex. Crim. App. 2008), cert. denied,
129 S. Ct. 2075 (2009).  To
determine whether jury argument is improper, we assess the argument as a whole
and in context.  Cruz v. State, 225 S.W.3d 546, 549 (Tex.
Crim. App. 2007).

          The
following exchanges occurred:

[Prosecutor]:     . . . Repeatability, corroboration.  And he wants to spend a lot of time talking
about Mr. Lovett.  And, you know what, if Mr. Lovett did not help you understand the
testimony, if he didn’t help you understand the testimony, then toss him out,
because we don’t need him.  And that’s
the incredible thing about this case, the weight of evidence we have, we could
have rested after the EMTs testified, after adding the testimony about his
prior convictions, because by the time the EMTs took the stand, you had
evidence from Sharmon Teel - - and this idea that the damage - -
that somehow he was avoiding an accident, if you believe that, then the damage
to Sharmon Teel’s vehicle appeared out of thin air, he had nothing to do with
it.

 

          Mr. Lovett explained to you, very
clearly.  The version that he would like
to have, the version that he wished was here is that Sharmon was somehow
responsible.  It is impossible.  And he has no burden of proof.  Don’t you know if there was an expert that he
could have taken and brought into this courtroom to dispute the findings of Mr. Lovett,
you would have heard it?  You would have
heard it.

 

[Defense counsel]:   Object to
that.  It’s an attempt to shift the
burden of proof.  It’s an improper jury
argument.

 

THE COURT:   I’m sustaining the objection as a precaution.

[Defense counsel]:   I’d ask the Court
to instruct the jury to disregard the comment by the prosecutor.

 

THE COURT:   I will instruct the
jury:  The Defense has no burden of
proof.

 

[Defense counsel]:   I’d ask the Court for a mistrial.

THE COURT:   That will be denied.

The
State’s argument above followed defense counsel’s argument, which included the
following:

          Did that behavior, in essence, cause
the death of Ms. Kumar?  Well, if you
believe that [Alami] struck the back of the Santa Fe - - and I’m
going to get into Mr. Lovett’s calculation of the speed of the car in a minute
because I think they’re horribly flawed and I will explain to you why. . . .

 

                   . . . .

          In this, State’s Exhibit No. 42, Mr.
Lovett hypothetically draws a point of collision, a point of collision.  “Do you know where the collision happened,
Mr. Lovett?”

 

                   “Well, I don’t know where it
happened.”

          “Did you ask Detective Davis?  Are there any objects on the ground that we
could look to?”

 

          “No.” 
But somehow, arbitrarily, he just puts it up there and says, “Well, I
don’t use it for measure.  That’s not
what I use for measurements.”  Well, it
was pretty important depiction how he thought it happened and how the car
turned.

 

          The State’s complained-of
argument—which occurred immediately after the prosecutor reminded the jury that
Alami “has no burden of proof”—was proper because it was made in response to
defense counsel’s argument challenging Lovett’s calculations and
conclusions.  Because the State’s
argument was within one of the four permissible areas of jury argument, we hold
that the trial court did not abuse its discretion by denying Alami’s motion for
a mistrial.  See Blue v. State, No. 14-09-00184-CR, 2010 WL 1655485, at *6–7
(Tex. App.—Houston [14th Dist.] Apr. 27, 2010, no pet.)
(mem. op., not designated for publication) (overruling
appellant’s argument that the trial court abused its discretion by denying his
motion for a mistrial).

VI.  Conclusion

          Having overruled Alami’s five points,
we affirm the trial court’s judgment.

 

 

 

 

 

BILL MEIER

JUSTICE

 

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

 

DAUPHINOT,
J. filed a concurring opinion.

 

PUBLISH

 

DELIVERED:  January 6, 2011

 















 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00151-CR

 

 


 
 
 Christopher Blake Alami
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE 372nd District Court OF Tarrant COUNTY

------------

CONCURRING
OPINION

------------

Appellant
Christopher Blake Alami was charged with felony murder, with felony driving
while intoxicated (DWI) as the predicate felony.  Appellant challenges the sufficiency of the
evidence, and the majority correctly holds the evidence sufficient under the Jackson
standard.  But the majority mistakenly
states that I do not believe felony DWI can serve as the underlying felony in a
felony-murder prosecution.[6]  So long as the State proves that a defendant
committed an act clearly dangerous to human life that caused the death of an
individual during the commission of a felony, including a felony DWI, the State
proves felony murder.  However, the
underlying felony alone cannot be the act clearly dangerous to human life.

          This court, our sister courts, and the
Texas Court of Criminal Appeals have all addressed the issue of whether felony
murder and intoxication manslaughter are in pari materia.  That is, we have all addressed the question
of whether proving death during DWI is, alone, sufficient to prove felony
murder.  We have held that it is
not.  This court explained,

Importantly, felony murder
and intoxication manslaughter require different elements of proof.  Felony murder requires the commission of an
underlying felony, which intoxication manslaughter does not—a person can be
convicted of intoxication manslaughter even if he was committing misdemeanor
DWI at the time his actions caused another=s death. 
Felony murder also requires that the defendant have committed Aan act clearly dangerous to
human life,@ yet the intoxication
manslaughter statute applies when the defendant causes a death by Aaccident or mistake.@[7]

 

Felony
murder requires an underlying felony as well as a second act clearly dangerous
to human life that results in the death of another person.[8]  Intoxication manslaughter requires DWI and death.[9]  Clearly, DWI cannot, alone, be the act
clearly dangerous to human life.  If it
were, every intoxication manslaughter would be a
felony murder if the driver had been twice previously convicted of DWI, and
there would be no need to plead or to prove an additional act clearly dangerous
to human life.

The
majority here has affirmed a conviction for felony murder when DWI serves as
the predicate felony and the act clearly dangerous to human life is the
intoxicated driving.  As the majority
points out, Timothy Lovett, the accident reconstructionist who testified for
the State, stated that the automobile crash that killed Kumar was the type of
automobile crash that he would expect to see when an intoxicated driver was
involved because a sober person could have avoided the collision.[10]  Officer Brown testified that Appellant=s
intoxicated driving caused the wreck. 
Although the act clearly dangerous to human life may flow naturally from
the underlying felony, the legislature has not permitted the act to be the
underlying felony offense.

Felony
murder has two distinct requirements:  the commission of an
underlying felony, which may or may not require a mental state, and the
commission of an act clearly dangerous to human life.[11]

The State
understandably wanted a higher range of punishment than intoxication
manslaughter provides for a person who was committing felony DWI when he caused
the death of another person.[12]  Because there is now a single range of
punishment for intoxication manslaughter, whether the resulting death is caused
during the driver=s first, third, fourth, or fifth
DWI,[13] the State
is forced into the position of trying to separate the intoxicated driving from
DWI.

Respectfully,
I would submit that the legislature should assess the situation to determine
whether it is appropriate for the penalty for intoxication manslaughter to be
higher when the person committing the offense has twice previously been
convicted of DWI, making the current DWI a felony DWI.  The legislature can easily rewrite the
statute so that intoxication manslaughter for a first or even second DWI can
have a different range of punishment from intoxication manslaughter committed
by a person who has already been twice convicted of DWI.[14]

Neither
the judicial branch nor the executive branch makes laws.  Neither the judicial branch nor the executive
branch determines the appropriate range of punishment.  These decisions fall within the exclusive
province of the legislature. As the Texas Court of Criminal Appeals reminds us,

[W]e interpret
the Legislature=s statutes, not its
intentions. . . .  As the
Supreme Court reminded us . . . , A[I]f Congress enacted into
law something different from what it intended, then it should amend the statute
to conform it to its intent.  It is
beyond our province to rescue Congress from its drafting errors, and to provide
for what we might think . . . is the preferred result.@[15]

 

Because I
agree that the evidence is sufficient to support Appellant=s
conviction but also believe that the legislature should consider modifying the
range of punishment available under the intoxication manslaughter statute when
the defendant has multiple DWI convictions, I respectfully concur.

 

 

 

 

 

LEE ANN
DAUPHINOT

JUSTICE

 

PUBLISH

DELIVERED:  January 6, 2011











[1]These witnesses included Ybarra, Johnston,
Hendricks, and Fischer.





[2]We
hold that Alami preserved this point for appellate review.





[3]We
hold that Alami preserved this point for appellate review.





[4]Ferguson was the first paramedic to respond
to the incident.





[5]Further, as the State points out, the trial
court charged the jury that it could only consider the evidence of Alami’s
prior convictions “on the issue of whether the Defendant was committing a
felony at the time of the alleged offense” and not “in any manner proving or
tending to prove that [Alami] was intoxicated while operating a motor vehicle
in a public place on or about the 13th day of June, 2008.”





[6]Majority
op. at 12.





[7]Strickland
v. State,
193 S.W.3d 662, 667–68 (Tex. App.—Fort Worth 2006, pet. ref=d) (citations omitted).





[8]See Tex. Penal Code Ann. ' 19.02(b)(3) (Vernon 2003).





[9]Id. ' 49.08 (Vernon Supp.
2010).





[10]Majority op. at 9–10.





[11]Tex. Penal Code Ann. ' 19.02(b)(3).





[12]See id.
'' 19.02(b), (c)
(providing felony murder is generally a first-degree felony), 49.08 (providing
intoxication manslaughter is generally a second-degree felony).





[13]See id. ' 49.08.





[14]See, e.g., id. ' 49.09(b-1), (b-2),
(b-3) (elevating intoxication manslaughter to a first-degree felony if the
person killed was a peace officer, firefighter, or emergency medical services
personnel discharging an official duty).





[15]Getts v. State, 155 S.W.3d 153, 158 (Tex.
Crim. App. 2005) (quoting Lamie v. U.S. Trustee, 540 U.S. 526, 542, 124
S. Ct. 1023, 1034 (2004)).