

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00085-CR

Cody James **LORENZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 12-0259-CR
Honorable W.C. Kirkendall, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  June 11, 2014

AFFIRMED

Appellant Cody James Lorenz entered an open plea to the offense of felony murder and elected to have the trial court assess punishment.  The trial court sentenced Lorenz to confinement for fifty years in the Texas Department of Criminal Justice—Institutional Division.  Lorenz raises one issue on appeal, contending he received ineffective assistance of counsel.  We affirm the trial court's judgment.

**BACKGROUND**

Lorenz ran a red light and struck a vehicle driven by Amber Rollins as she proceeded through an intersection. Rollins died as a result of the collision. After the incident, Lorenz's blood was drawn and it was determined he was intoxicated, having a blood alcohol level of .17 — more than twice the legal limit. The parties stipulated to the blood alcohol level, and stipulated that Lorenz had two prior convictions for driving while intoxicated ("DWI").

Lorenz was indicted for the offense of felony murder — the underlying felony was DWI. Although the State need not prove a particular mental state to obtain a conviction for murder committed in the course of committing felony DWI, *see Lomax v. State*, 233 S.W.3d 302, 304, 311 (Tex. Crim. App. 2007), Lorenz's indictment stated, in part, that Lorenz, "did then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life . . . and the defendant was then and there in the course of intentionally or knowingly committing a felony[.]"

The case was called for jury trial. During pretrial hearing discussions, and before Lorenz was present in the courtroom, the trial court asked "if there was any chance of a plea in this case." Lorenz's trial counsel replied, "No, your Honor." Almost immediately thereafter, the State moved to strike the portion of the indictment quoted above, arguing it was surplusage. The trial court stated the matter would be determined once Lorenz was in the courtroom. Lorenz's trial counsel stated he intended to object and would argue "that it's a fundamental right . . . my whole case was — was based on that." At that time, Lorenz was brought to the courtroom.

Once Lorenz was in the courtroom, the trial court took up the State's motion to strike the mental state portions of the indictment. The State argued that under the *Lomax* decision, the language was surplusage because the State was not required to prove a mental state in a felony murder case where the underlying felony is DWI. Lorenz's trial counsel objected, stating "I object

on the grounds it's a fundamental right of the Defendant.  In addition to that, it's not surplusage.  This is a violation of his Constitutional rights."  The court overruled the objection and granted the State's motion.  The trial court interlineated the mental state language from the indictment and initialed the change.

At that point, having mentioned his intent to seek a continuance earlier in the proceedings in the event the State's motion was granted, Lorenz's counsel urged a motion for continuance, and in support called Lorenz to the stand.  Lorenz testified he and his trial attorney spent a significant amount of time discussing the importance of the "intentionally or knowingly" language that was included in the indictment.  Lorenz testified that neither he nor his attorney knew the State was going to file a motion to delete the mental state language from the indictment.  Lorenz further stated their entire case was premised on the existence of the mental state language in the indictment.  According to Lorenz, given the trial court's decision to grant the State's motion to strike that language, he needed time to discuss the case with his attorney so he could "intelligently and voluntarily" make decisions about how to proceed, specifically about whether to plead guilty.

The trial court denied the motion for continuance, but granted Lorenz and his counsel one hour and twenty minutes to confer about the case.  After they conferred, they re-entered the courtroom.  The record establishes Lorenz was called to the stand, apparently having decided to enter a plea of guilt.  The trial court first asked Lorenz if he had "been over that indictment" with his attorney.  Lorenz stated he had.  The trial court then asked Lorenz if he understood the charges against him, to which Lorenz replied that he did.  The trial court explained the range of punishment.  The trial court thereafter admonished Lorenz about his rights — right to a jury trial, cross-examine witnesses, introduce evidence, etc.  Lorenz stated he understood that if he pled guilty, he would give up those rights.  Lorenz admitted he and his attorney had reviewed the "Waiver, Stipulations and Admonishments," and that he understood it before he signed it.  Lorenz stated he had enough

time to discuss the case with his attorney and review all the necessary paperwork. Lorenz further stated he was satisfied with his attorney's representation of him and that no one had forced him to plead guilty. Lorenz testified he was entering a plea of guilty because he committed the crime he was pleading to. Lorenz then entered an open plea of guilty to the offense of felony murder.

Having entered an open plea and elected to have the trial court assess punishment, a punishment hearing was subsequently held. At the hearing, the State asked the trial court to incarcerate Lorenz for life. Lorenz asked for a lesser sentence, though he did not request a specific number of years. The trial court assessed punishment at fifty years' confinement.

Thereafter, Lorenz filed a motion for new trial in which he argued the trial court erred in granting the State's motion to remove the mental state language from the indictment and in denying his motion for continuance. Lorenz claimed these errors resulted in an involuntary plea given the short time he was given to confer with trial counsel. He also asserted his trial counsel was ineffective, testifying he did not understand the effect of the trial court's decision to strike portions of the indictment or how it would affect any trial strategy. Lorenz also claimed he did not understand his decision to plead guilty, and asserted he was taking a narcotic medication on the day of his plea, which may have affected his ability to understand what was happening. Lorenz testified: (1) his attorney did not effectively explain the case to him, (2) he did not understand the difference between murder and felony murder, (3) and he did not fully understand his possible defense, particularly after the trial court granted the State's motion to remove the mental state language from the indictment.

However, on cross-examination, Lorenz admitted he had pled guilty on four other occasions and that in those cases his attorneys explained the terms of the plea agreement and accompanying paperwork. He also admitted that he read the "Waiver, Stipulation and

Admonishments," discussed the terms with his attorney, and that he swore in court he understood the document.

The trial court did not render a formal order denying the motion for new trial. Lorenz subsequently filed a timely notice of appeal.

## ANALYSIS

On appeal, Lorenz contends he did not receive effective assistance of counsel as required by the Sixth Amendment. Specifically, Lorenz argues his trial counsel was ineffective because: (1) he believed he could defend Lorenz by arguing the State did not prove Lorenz acted intentionally or knowingly; and (2) he believed he could obtain a ten-day continuance under article 28.10 of the Code of Criminal Procedure when the State's request to abandon the mental state language from the indictment was granted. Lorenz contends this deficient conduct resulted in his open plea of guilt and subsequent fifty-year sentence.

### *Standard of Review*

A criminal defendant has a Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984); U.S. CONST. amend. VI. To determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel, we apply the United States Supreme Court's two-pronged *Strickland* test. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Under *Strickland*, a party claiming ineffective assistance of counsel has the burden to establish by a preponderance of the evidence: (1) deficient performance of trial counsel; and (2) harm resulting from that deficiency sufficient to undermine confidence in the outcome of the trial. *Ex Parte LaHood*, 401 S.W.3d 45, 49 (Tex. Crim. App. 2013) (citing *Strickland*, 466 U.S. at 687). The assessment of whether a defendant received effective assistance of counsel is made on a case-by-case basis by looking to the totality of the representation and the particular circumstances of the case. *Thompson*, 9 S.W.3d at 813.

Our review of defense counsel's trial representation is highly deferential, and we must presume trial counsel's actions fell within the wide range of reasonable and professional assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Generally, a direct appeal is insufficient for an ineffective assistance of counsel claim because the record is typically insufficient to show trial counsel's representation was so deficient and so lacking in legal tactics or strategy as to overcome the presumption that trial counsel's conduct was reasonable and professional. *Id.* Any claim of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. Moreover, our inability to "discern any particular strategy or tactical purpose in counsel's trial presentation," does not entitle us to assume there was none. *Bone*, 77 S.W.3d at 836. In fact, to do so "inverts the analysis." *Id.* It is up to the defendant to prove by a preponderance of the evidence a lack of any plausible reason for trial counsel's act or omission. *Id.*

### *Application*

We hold the record does not affirmatively demonstrate trial counsel lacked a sound trial strategy or acted outside the proper range of reasonable and professional assistance. *See Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012); *Badillo v. State*, 255 S.W.3d 125, 129 (Tex. App.—San Antonio 2008, no pet.). Thus, Lorenz has not sustained his burden.

Lorenz first argues trial counsel was ineffective because he erroneously believed he could defend the felony-murder case by arguing the State could not prove that Lorenz acted intentionally or knowingly. Lorenz correctly points out that the Texas Court of Criminal Appeals held no proof of a mental state is necessary to obtain a conviction for felony murder when the underlying felony is DWI. *See Lomax*, 233 S.W.3d at 304, 311. However, the record does not establish that lack of evidence of a mental state was trial counsel's proposed trial strategy. In fact, the record belies such a claim, i.e., that counsel was unaware of the applicable law according to *Lomax*. When

specifically asked by the trial court if his position was that a culpable mental state is required for the offense of felony murder when the underlying felony is DWI, trial counsel responded "No, Judge. I'm objecting to amending — . . . [w]ell abandoning." Thus, trial counsel affirmatively denied a lack of knowledge of the applicable law. Moreover, trial counsel never stated this was his strategy. Rather, he merely stated "my whole case was — was based on that." He then objected to the State's motion by stating "it's a fundamental right of the Defendant . . . it's not surplusage . . . [t]his is a violation of his Constitutional rights." Nowhere does trial counsel contend he intended to defend Lorenz by arguing lack of evidence with regard to a mental state.

Trial counsel's conduct could plausibly be explained as an attack on a defective indictment, pointing out a variance between the indictment and the offense charged. When an indictment contains a defect, defense counsel may develop a trial strategy designed to exploit the defect. We do not know the exact nature of trial counsel's strategy with regard to his objection to the indictment, but such knowledge is not necessary. Based on this record, it is possible counsel had legitimate and professionally sound reasons for his objection — other than those attributed to him in this appeal.

Based on the record before this court, we cannot say trial counsel's strategy was outside of professional norms — such a finding is not firmly founded in the record.

Second, Lorenz contends that trial counsel erred in believing that he could automatically obtain a ten-day continuance when the State's request to abandon the surplus language was granted. Lorenz argues that this resulted in his decision to plead guilty, after which he received a fifty-year sentence. There are, however, two problems with this argument. First, the record does not support Lorenz's claim that trial counsel believed he was automatically entitled to a ten-day continuance under article 28.10, which states that when the State amends an indictment the court shall allow the defendant not less than ten days to respond to the amended indictment. *See* TEX.

CODE CRIM. PROC. ANN. art. 28.10(a) (West 2006). Rather, the record reflects trial counsel sought a continuance so he would have additional time to discuss the surplusage issue with Lorenz and the impact it might have on a decision to plead guilty. Extrapolating from the record, it could well be that trial counsel — having lost the opportunity to possibly exploit a variance in the indictment — wanted to recommend Lorenz plead guilty, particularly given that the record establishes Lorenz intended to stipulate to his blood alcohol level and his two prior convictions. Counsel never mentions article 28.10(a).

In addition, the record is silent as to whether Lorenz would have made a different decision, that is, pled not guilty, had the ten-day continuance been granted. It is unclear from the record what went into Lorenz's decision-making process. The record reflects that after the State's motion to remove the mental state language was granted, Lorenz and his trial counsel conferred for over an hour — despite Lorenz's claim at the motion for new trial hearing that it was mere minutes. After they conferred, Lorenz stated on the record that he was pleading guilty of his own volition because he did in fact commit the crime he was being charged with. He swore he understood the charges and possible sentence, as well as the rights he was waiving. Moreover, Lorenz affirmatively stated on the record that he was satisfied with his trial counsel's performance. Thus, we hold the record does not demonstrate trial counsel acted outside the proper range of reasonable and professional assistance. *See Badillo*, 255 S.W.3d at 129.

## CONCLUSION

Because Lorenz has failed to establish by a preponderance of the evidence that trial counsel was ineffective for either reason asserted, we overrule his claims of ineffective assistance of

counsel. Lorenz's claims are not firmly founded in the record. Accordingly, we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish